## AUGUSTUS THORNDIKE *vs.* CITY OF BOSTON.

A citizen of Boston, who had been at school in the city of Edinburgh when a boy, and formed a predilection for that place as a residence, and had expressed a determination to reside there, if he ever should have the means of so doing, removed with his family to that city, in 1836, declaring, at the time of his departure, that he intended to reside abroad, and that if he should return to the United States, be should not live in Boston. He resided in Edinburgh, and the vicinity, as a housekeeper, taking a lease of an estate for a term of years, and endeavoured to engage an American to enter his family for two years, as instructor of his children. Before he left Boston he made a contract for the sale of his mansion house and furniture there, but shortly afterwards procured said contract to be annulled, (assigning as his reason therefor, that in case of his death in Europe, his wife might wish to return to Boston,) and let his house and furniture to a tenant. *Held*, that he had changed his domicil, and was not liable to taxation as an inhabitant of Boston, in 1837.

In an action to try the question whether the plaintiff, who had left the country with his family, was liable afterwards to be taxed as an inhabitant of the place of his former residence, a letter from him to his agent in that place, expressing his intention to reside abroad permanently, is admissible in evidence, if written before he knew that a tax had been assessed upon him, though written after the assessment. *Aliter*, it seems, of such letters written after he knew that he was taxed.

When evidence has been improperly received or rejected, and a verdict is found against the party taking the exception, and a motion for a new trial is made on that ground, such motion will not be granted, if the court can see plainly, from the whole evidence, that independently of the evidence received or rejected, the evidence in support of the verdict so decidedly preponderates, that a verdict the other way would be set aside as against evidence.

ASSUMPSIT for money had and received, to recover back the amount of a poll tax and a tax on the personal property of the plaintiff, assessed upon him in the year 1837, by the assessors of the city of Boston, and paid to the city collector, under protest, in order to prevent a distraining · · the plaintiff's property.

It appeared from the report of *Wilde*, J. before whom the case was tried, that in the year 1836, the plaintiff was an inhabitant of Boston, but in the month of October in that year, he went with his family to Edinburgh in Scotland, where he lived at lodgings for a short time, and afterwards went to housekeeping, taking a governess into his family for his younger children ; that his principal residence, ever since, had been at Edinburgh, but during a part of each year he had lived on an estate, in the neighborhood of that city, which he had hired for a term of

years ; that in July, 1837, the plaintiff came to Boston on private business, where he remained a few days only, and then returned to his family in Edinburgh.

It also appeared that the plaintiff, while a boy, was at school in Edinburgh for four years previous to 1813, and on his return to this country in that year, and on numerous occasions since (the last of which was not more than a year or two before his removal, in 1836) he expressed a great predilection for Edinburgh as a place of residence, and a desire and intention to live there, if he ever should have the means to enable him to do so ; that about the time of his departure in 1836, and while making his preparations, he declared to two of his friends his intention to reside abroad, as long as his wife should be pleased with or like such residence ; and that he should stay as long as he could, and if he ever should come back to this country, he should not live in Boston, as he preferred New York or Baltimore ; and that in April, 1837, he requested a friend then in Edinburgh, and about to return to Boston, to make a contract, for two years, with a gentleman in this country, to go out to the plaintiff for the purpose of superintending the education of his children.

It further appeared, that in the winter previous to the plaintiff's removal, he made a contract for the sale of his mansion house and furniture in Boston, but shortly afterwards procured the contract to be annulled, giving as his reason for so doing that in case of his death in Europe his wife might wish to return to Boston ; and before he went away, he let the house and furniture to a tenant, who still occupies it.

Several letters of the plaintiff, (the first dated Oct. 27th, 1837, and the others between that day and July, 1838) to his agent in Boston, giving instructions as to his property and directing the sale of his mansion house, if a certain price could be obtained, and declaring his intention not to return to Boston to live, were read to the jury, though the defendants objected to their being admitted in evidence.

The judge instructed the jury, that the question for them was, whether the plaintiff's residence was in Boston, on the 1st of May, 1837 ; that if they were satisfied that the plaintiff

went abroad, not for the mere purpose of travelling or for any particular object, intending to return when that was accomplished, but with the intention of remaining abroad for an indefinite length of time, or with the intention of not returning to Boston to live, even if he should ever return to the United States, then he ceased to be an inhabitant of Boston for the purposes of taxation there.

The jury returned a verdict for the plaintiff, and the defendants moved for a new trial because of misdirection, and also because the letters before mentioned were admitted in evidence.

*J. Pickering*, (City Solicitor,) for the defendants, questioned the correctness of the instructions to the jury ; but relied principally on the exception to the admission of the defendant's letters in evidence. All those letters were written after the tax was assessed, and the first of them was dated a year after he left Boston. The others were written at a still later date. They were not proper evidence of the plaintiff's intentions at the time he left the country. They formed no part of the *res gesta*. Declarations of a party must be contemporary, in order to be admissible in his favor. In cases of bankruptcy, greater latitude is allowed ; but the bankrupt's declarations are received as his confessions, and against his interest. *Bateman v. Bailey*, 5 T. R. 512. *Robson v. Kemp*, 4 Esp. R. 233. *Kent v. Lowen*, 1 Campb. 177. *Marsh v. Meager*, 1 Stark. R. 353. *Rex v. Cotton*, 3 Campb. 444. *Rawson v. Haigh*, 1 Car. & P. 77. *Schooling v. Lee*, 3 Stark. R. 149. *Pool v. Bridges*, 4 Pick. 378. If the letters were improperly received in evidence, a new trial must be granted. The court cannot say that the verdict must have been for the plaintiff, if the letters had not been admitted, even under the rule adopted in *Crease v. Barrett*, 1 Crompt. Mees. & Rosc. 919 ; *Wright v. Tatham*, 7 Adolph. & Ellis, 313 ; and *Rutzen v. Farr*, 4 Adolph. & Ellis, 56.

*Gardiner* and *English*, for the plaintiff. The instructions to the jury were correct. 5 Greenl. 143. 266. Story's Conflict of Laws, 42. 45. *Putnam v. Johnson*, 10 Mass. 501. *Turner v. Buckfield*, 3 Greenl. 231. *Knox v. Waldoborough*, 3 Greenl. 457. *Parsonsfield v. Kennebunkport*, 4 Greenl. 47

*The Venus*, 8 Cranch, 279. *Attorney General* v. *Coote*, 4 Price, 183. 2 Bos. & Pul. 230, *note*. *Balfour* v. *Scott*, 6 Bro. P. C. 550. *Wrigley's case*, 8 Wend. 134. 1 Binn. 352, *note*. *Elbers* v. *United Ins. Co.* 16 Johns. 133. Tomlin's Law Dict. (Granger's ed.) tit. Domicile.

· The letters were received to show the plaintiff's intention, which was the turning point of the case. His acts had been shown before his letters were read to the jury. In *Richmond* v *Vassalborough*, 5 Greenl. 396, a party was allowed, long after he removed from a place, to state to the jury his intention when he removed. See also *Allen* v. *Duncan*, 11 Pick. 308. *Rawson* v. *Haigh*, 2 Bing. 104. *Doe* v. *Arkwright*, 5 Car. & P. 575. *Jennison* v. *Hapgood*, 10 Pick. 89. *Makepeace* v. *Lee*, cited 5 Pick. 378. *The Indian Chief*, 3 Rob. 19.

But if the letters were not admissible, the evidence was decisive without them, and therefore a new trial will not be granted. *Prince* v. *Shepard*, 9 Pick. 176. *Stiles* v. *Tilford*, 10 Wend. 338.

SHAW, C. J. The object of the present action is to recover back a sum paid by the plaintiff to the city, for a tax upon his poll and personal property, as an inhabitant and resident of the city, in May, 1837, and which he insists was wrongfully assessed upon him, because he had then ceased to be an inhabitant of the city.

The questions of residence, inhabitancy or domicil, — for although not in all respects precisely the same, they are nearly so, and depend upon much the same evidence, — are attended with more difficulty than almost any other which are presented for adjudication. No exact definition can be given of domicil ; it depends upon no one fact or combination of circumstances, but from the whole taken together it must be determined in each particular case. It is a maxim, that every man must have a domicil somewhere ; and also that he can have but one. Of course it follows, that his existing domicil continues until he acquires another ; and *vice versâ*, by acquiring a new domicil, he relinquishes his former one. From this view it is manifest that very slight circumstances must often decide the question. It depends upon the preponderance of the evidence in favor of two or

21 *

more places ; and it may often occur, that the evidence of facts tending to establish the domicil in one place, would be entirely conclusive, were it not for the existence of facts and circumstances of a still more conclusive and decisive character, which fix it, beyond question, in another. So on the contrary, very slight circumstances may fix one's domicil, if not controlled by more conclusive facts fixing it in another place. If a seaman, without family or property, sails from the place of his nativity, which may be considered his domicil of origin, although he may return only at long intervals, or even be absent many years, yet if he does not by some actual residence or other means acquire a domicil elsewhere, he retains his domicil of origin.

The jury in the present case found a verdict for the plaintiff, thereby affirming the position that he was not an inhabitant of Boston, liable to be taxed, in May, 1837 ; and the defendants have moved for a new trial on several legal grounds.

The first question is, whether the instructions of the court to the jury were correct. There was evidence tending to show, that when the plaintiff removed with his family to Edinburgh, in 1836, he did it with the intention of fixing his residence permanently in Scotland ; and also, that if he should return to the United States, he should not return to Boston, but settle in New York or Baltimore. In reference to this evidence, the jury were instructed, that if they were satisfied that the plaintiff went abroad, not for the mere purpose of travelling, or for any particular object, intending to return when that was accomplished, but with the intention of remaining abroad for an indefinite length of time, or with the intention of not returning to Boston to live, in the event of his return to the United States, then he ceased to be an inhabitant of Boston, liable to taxation.

We think this direction, in connexion with the subject matter to which it applied, was correct. The actual change of one's residence, with his family, and the taking up of a residence elsewhere, without any intention of returning, is one of the strong indications of change of domicil, and, unless controlled by other circumstances, is decisive. It was for the jury to determine whether there were any circumstances sufficient to control such

conclusion.  If the plaintiff had left Boston and actually taken up a residence, with his family, in Scotland, without any intention of returning, thereby assuming that country as his definite abode and place of residence until some new intention had been formed or resolution taken, he had ceased to be an inhabitant of Boston, liable to taxation for his personal property.

The next question is upon the admission of several letters of the plaintiff.  They were offered on the ground that they were declarations of the plaintiff, accompanied with his acts of removal from Boston to Edinburgh, addressed to his agent in the ordinary course of his business, and were, therefore, as *res gesta* good evidence of his intentions connected with those acts.  The court are of opinion that the letter of October 27th, 1837, was admissible on this ground.  The taxes are assessed as of 1st May; but it is well known that the assessment is made in the course of the summer, and the tax bills issued in September.  There is no proof from the tenor of the letter or other evidence, that at that time the plaintiff knew that the tax had been assessed upon him.  It was written, therefore, before any controversy, and before he had any interest to make evidence for himself on this subject.  *Doe* v. *Arkwright*, 5 Car. & P. 575.  The admissibility of the later letters is much more questionable.  The admission of declarations, either written or verbal, in connexion with acts done, and giving a character to such acts, depends much on circumstances, and upon the nearness or distance of the time of the declarations made to the act done.  The most common instances arise in cases where certain acts, done with certain intentions, constitute acts of bankruptcy, and the intention is the main queston; declarations of the bankrupt, verbal or written, at a near time of the act done, are admissible.  *Marsh* v. *Meager*, 1 Stark. R. 353.  But in this case, the letters were written after the suit brought, and we are strongly inclined to the opinion that they were not admissible.  Then an important question arises, whether on that ground a new trial ought to be granted.

It has sometimes been said by judges of English courts, that an application for a new trial, being to the discretion of the court

they will not grant it, if on the whole the court can see that · justice has been done. *Doe* v. *Tyler*, 6 Bing. 561. *Horford* v. *Wilson*, 1 Taunt. 12. There seem, however, to be obvious difficulties in placing the matter upon this ground. It is not always easy for the court to distinguish between the force and effect of the competent and incompetent evidence, and to say with certainty, that the latter has had no influence in deciding that justice has been done, and that the evidence, independently of the incompetent evidence admitted, is sufficient to warrant the verdict. But there is an objection deeper and more formidable in point of principle than this ; it arises from that fundamental rule in the conduct of jury trials, that it is as much the province of the jury to ascertain the truth of facts upon competent evidence, as it is the province of the court to decide upon the competency of evidence, and generally upon the rules of law by which a jury are to be governed. This consideration, taken in connexion with the difficulty of ascertaining upon a mass of evidence, some of which is incompetent, how great an effect is to be attributed to the incompetent evidence, renders it difficult to say, that the incompetent evidence was not the turning weight in the scale which caused the verdict.

It is, however, manifest in many cases, and it must be obvious to those who are conversant with the conduct of jury trials, that after a long trial, embracing a great variety of evidence, the admission or rejection of a particular piece of evidence is wholly immaterial. It not unfrequently occurs, that in the early stage of a cause, evidence is admitted which ought to have been rejected, or rejected, which ought to have been admitted ; and afterwards, in the further progress of the trial, other evidence, unobjectionable, is offered, which renders the evidence before admitted or rejected wholly immaterial. It may either prove the same fact by evidence wholly unobjectionable, or by placing the cause in another aspect, show it to be wholly immaterial. In such a case, it would seem to be inconsistent with the great purposes of jury trial — the discovery of truth and the attainment of justice — to adopt and apply an inflexible rule, that such a verdict must be set aside and a new trial ordered, especially

when it appears upon the whole evidence that another verdict, upon the same evidence, rejecting the incompetent evidence which had been admitted, or adding the competent evidence which had been rejected, must be the same as it is, or be plainly wrong.

But we think there is one rule upon this subject which may be safely adopted, and which is perfectly consistent with the principle which assigns the duty of finding facts upon evidence to the jury, and that of pronouncing the law to the court. By the modern practice, courts are constantly called upon, upon motions for new trials, to consider the weight and sufficiency of evidence ; and though they do not pronounce a judgment upon their view of the evidence, except when it is specially referred to them, yet they do and must so far decide upon the weight of evidence as to determine whether a verdict shall stand or be set aside, as against the weight of evidence ; by which the same evidence is referred to another jury. The grounds upon which this power is exercised have been too often explained to require repetition.

Taking this principle as a guide, we think the rule may be thus stated : where evidence has been improperly received or rejected, and the verdict is found against the party taking the exception, and a motion for a new trial is made on that ground, such motion will not be granted, if the court can see plainly from the whole evidence, that independently of the evidence received or rejected, the evidence in support of the verdict so decidedly preponderates, that a verdict the other way would be set aside as against evidence. Such a rule, we think, will tend to save unnecessary expense of litigation, to subserve the purposes of justice, and will not be inconsistent with strict legal principle. Such also, we think, is the rule recently adopted in the courts of common law, limiting the broader construction formerly put upon the powers of the court in this respect. *Rutzen* v. *Farr*, 4 Adolph. & Ellis, 56. *Wright* v. *Tatham*, 7 Adolph. & Ellis, 330. *Crease* v. *Barrett*, 1 Crompt. Mees. & Rosc. 919. *S. C* 5 Tyrw. 458.

The only remaining question is, whether the evidence in the

present case, independently of the plaintiff's letters, written after he had knowledge that a tax had been assessed upon him, was so conclusive, that a verdict against him could not have been retained by the defendants.

(The chief justice here recapitulated the evidence, as stated in the report thereof by the judge who tried the case.)

Guiding ourselves by the rules which have been applied to motions for new trials, the court are of opinion, that a verdict against the plaintiff, upon this evidence, finding that he had not changed his residence and ceased to be an inhabitant of Boston, at the time this tax was assessed, would have been so manifestly against the evidence, that on a motion for a new trial, it could not have been supported.

*Judgment on the verdict.*