BEN B. WOOD v. MAX L. ROEDER.

| 45 | 311 |
| 49 | 605 |
| 52 | 657 |
| f55 | 320 |

FILED JUNE 18, 1895.   No. 6867.

1. **Summons:** SERVICE: PLACE OF RESIDENCE.   The words "residence," and "usual place of residence," as employed in statutes, are generally synonymous with the term "domicile," hence the residence essential to confer jurisdiction is a legal one equivalent to the domicile of the defendant.

2. ———: ———: ———.   The domicile of a defendant is that place where he has his fixed and permanent home, and to which, when absent, he has the intention of returning.

3. ———: ———: ———.   To effect a change of domicile there must not only be a change of residence, but an intention to permanently abandon the former home.   The mere residing at a different place, although evidence of the required intention, does not *per se* constitute a change of domicile.

4. ———: ———: ———.   On the 10th day of February, 1894, R., a resident of O., in this state, with his family, went to New York city, among other purposes to establish institutes for the cure of the morphine habit, leaving his furniture and household goods in charge of a servant in a rented house, for which he continued to pay rent monthly until June 1, following.   In the spring of that year he sent to O. some of his own and his wife's winter clothing and caused their summer clothing to be forwarded to them.   On May 7, of the same year, R. wrote his landlord requesting a lease of the house occupied by him for the ensuing year, and saying: "I am closing up an important deal that will take from two to three weeks.   In that case Mrs. R. will spend a few weeks at the sea shore before returning home."   The servant in charge of the house understood their absence to be temporary merely and was not advised of any in-

tention on the part of R. to reside permanently in New York until the month of June, and was, on the 17th day of April, engaged in putting the house in order preparatory to the return of the family, when a copy of the summons herein was by the sheriff left with her in said house for R. *Held*, Not to establish a change of domicile by R., and that the service of summons was at his usual place of residence within the meaning of the Code of Civil Procedure.

5. ——— : ———. *Haynes v. Aultman*, 36 Neb., 257, distinguished.

OBJECTION by defendant in error to jurisdiction of supreme court on the ground that there was no legal service of summons in error. *Objection overruled.*

*Winfield S. Strawn*, for defendant in error.

*George E. Pritchett*, contra.

POST, J.

This is an objection by the defendant in error Roeder to the jurisdiction of this court on the ground that there was no legal service of the summons in error. It is conceded that a petition in error was filed herein within one year from the date of the judgment below, and that a summons was in due time issued for the defendant in error, directed to the sheriff of Douglas county, which was subsequently returned, showing service in due form by copy left at the usual place of residence of the defendant in error in said county. It is claimed in support of the objection that Roeder was not, at the date of such service, to-wit, April 17, 1894, a resident of Douglas county, but that he had, on the 10th day of February previous thereto, removed with his family from the city of Omaha to the state of New York, where he had a permanent residence at the date first mentioned. Numerous affidavits have been submitted in support of the objection, among others one by Roeder himself, which, so far as material to the question at issue, is as follows: "Max L. Roeder, being

duly sworn, deposes and says that he is the identical person above named, defendant in error in the above entitled cause; that on February 10, 1894, affiant removed with his family from the city of Omaha, Nebraska, to the city of New York, in the state of New York; that since said date affiant has been continuously a citizen of the state of New York; that since said February 10, 1894, this affiant has not been a resident of the city of Omaha, or state of Nebraska, nor had any home or place of residence in the said city of Omaha, or in the county of Douglas, in the state of Nebraska, nor has affiant or his family, or any of them, since said date ever been in said county of Douglas, or further west than the state of New York." The other affidavits are to the same effect and in substantially the same language as the above.

From evidence submitted by the plaintiff in error it appears that immediately prior to the departure of Roeder and wife from Omaha, they were occupying a rented house, in which they had resided continuously since the month of December, 1893, and their furniture and household goods, except a portion of their clothing and some silverware, were left in said house in charge of a servant, who remained on the premises most of the time, the balance of her time being spent with Mrs. Roeder's mother, Mrs. Goldsmith, under the direction of the Roeders. In the spring following their departure they shipped to Omaha some of their winter clothing, which they caused to be packed in said house, and by their order some summer clothing was forwarded to them at New York. At the time of the alleged service of the summons the servant mentioned was, in consequence of information received through Mrs. Goldsmith, engaged in cleaning and putting the house in order preparatory to the return of the Roeders. On the 7th day of May following the date of the service this letter was written by Mr. Roeder to his landlord in Omaha:

"PLAZA HOTEL, NEW YORK, MAY 7, 1894.

" *Geo. N. Hicks, Esq., New York Life Building, Omaha, Neb.*—DEAR SIR : I desire to be informed without delay if you will give me the lease on our house until next May. It is very important that I know this immediately so that I can make my arrangements, and either give up the house at once, or know that I will not have to return on a few days' notice and store my things, in case you sell the same. I am closing an important deal which may take from two to three weeks, in that case Mrs. Roeder would undoubtedly spend a few weeks at the sea shore before returning home. But if you will give us the lease or assurance that in case the house is sold, we will not be disturbed until next May, I will keep the same, as you know we think a great deal of that little corner. I do not know whether my man has paid the rent or not; if not, then please send bill and I will see that the same is forwarded. Please answer by return mail.

"Yours truly, M. L. ROEDER."

About June 1, following, Mrs. Roeder addressed Mr. Hicks as follows :

"PLAZA HOTEL, NEW YORK, Monday.

"DEAR MR. HICKS: It will be a great disappointment to me if you refuse to give us a lease on our house. You know I have always taken a great interest in it, and now, after having had it papered ·so prettily, it would be really too bad to have someone else move in. Some of my friends have invited me to spend the summer with them in their cottages at Buzzard's Bay and other resorts, but if we cannot get a lease on the house Mr. Roeder says I will have to return to Omaha at once and have everything stored. Please let us hear from you saying that we may rest easy about keeping the house for another year.

"Yours sincerely, MRS. ROEDER."

To Mr. Hicks, the party addressed in the foregoing communication, Roeder stated that he was going to New York

Wood v. Roeder.

for the purpose, among other things, of establishing insti-
tutes for the cure of the morphine habit, or to sell an
interest in a morphine cure owned by him.   He also paid
rent monthly for the house occupied by him, up to and
including June, 1894, and the servant above mentioned
understood the absence of the family to be temporary only,
and was not aware of any purpose on their part to remain
permanently in New York previous to the date last above
named.   The natural and necessary inference is, we think,
from the facts stated, that it was Roeder's purpose on leav-
ing to return to his home in Omaha, and that he had no
intention of abandoning his residence there prior to the
month of June, 1894, or more than six weeks subsequent
to the date of the service assailed.   Indeed, a critical ex-
amination of the proofs submitted by him, including his
own affidavit, fails to disclose any of the usual and cogent
evidences of a change of domicile.

The terms "residence" and "domicile," as used in
statutes, are generally convertible terms; hence, the resi-
dence essential to confer jurisdiction is a legal one equiva-
lent to the domicile of the defendant.   It is said in a recent
work of great merit that the fundamental idea of domicile
is the home. (Jacobs, Domicile, 72.  See, also, 5 Am. & Eng.
Ency. of Law, 857, and authorities cited.)   To effect a
change of domicile there must not only be a change of resi-
dence, but an intention to permanently abandon the for-
mer home.   The mere residing at a different place, although
evidence of a change, is, however long continued, *per se* in-
sufficient. (See Jacobs, Domicile, 125 *et seq.; Hodgson v.
De Beauchesne,* 12 Moore P. C. Cas. [Eng.], 283; *Moor-
house v. Lord,* 10 H. L. [Eng.], 285; *Frost v. Brisbin,* 19
Wend. [N. Y.], 11; *Dupuy v. Wurtz,* 53 N. Y., 556; *City of
Hartford v. Champion,* 58 Conn., 268; *Ayer v. Weeks,* 65
N. H., 248; *Cobb v. Rice,* 130 Mass., 231.)   We are aware
that a modification of that rule has been recognized in its
application to questions of taxation, the right to vote,

pauper settlement, and the like; but without doubt it applies in all its force to questions of jurisdiction as the basis for judicial proceedings. The provisions of our Code so far as they relate to the subject in hand are section 584, authorizing the service of a summons in error in the same manner "as in the commencement of an action," and section 69, providing for service of summons at the commencement of an action by delivering a copy thereof to the defendant personally, "or by leaving one at his usual place of residence, at any time before the return day." Reading these provisions in the light of common law principles we can perceive no ground upon which to doubt the sufficiency of the service on the defendant in error. This conclusion we confess may seem to conflict with some of the earlier decisions of this court, but a careful examination of those cases proves the conflict to be apparent rather than real. In *Blodgett v. Utley*, 4 Neb., 25, it is said: "The words 'usual place of residence' mean the place of abode at the time of service." That was a case involving the statute of limitations, in which the operation of the statute was held not to have been interrupted, the defendant having a residence in this state where service could have been made. In *Haynes v. Aultman*, 36 Neb., 257, the question involved was the validity of a judgment of a justice of the peace based upon service by a copy left at the former residence of the defendant, after he had removed with his family from the county and abandoned his domicile therein. It was held, on the authority of *Blodgett v. Utley*, that the service was unauthorized and the justice of the peace did not thereby acquire jurisdiction over the defendant. The defendant in error it seems relies with confidence upon the following expression of the opinion in that case: "If the debtor and all the members of his family are absent from the county and the time of their return is uncertain, or their absence will be protracted beyond the time of the trial, it is evident that a summons left at the former residence

Wood v. Roeder.

would not be sufficient to apprise the debtor of the action. For the purposes of that trial the summons would not be served at the residence of the debtor." The language quoted should, however, be understood as referring to the facts of that case, as otherwise it must be regarded as *obiter* merely. In *Forbes v. Thomas*, 22 Neb., 541, it was held on the facts that the plaintiff, who had removed to the territory of Dakota and remained there engaged in business for the period of four years, had abandoned his residence in this state, although his family resided here for a considerable portion of the time, there being evidence tending to prove an intention to acquire a domicile in that territory. It certainly cannot be said that this court is committed to the doctrine that the term "usual place of residence," as employed in the Civil Code, necessarily implies, in every case, the personal presence of the defendant or his family, or that the court will fail to acquire jurisdiction by reason of the continuous absence from their home of the defendant and family from the date of service until after the time of the trial. The views here expressed are in harmony with the rulings of the New York courts, from which it seems the defendant would in that state have no standing in any matter in which residence there is prescribed as a condition to the relief sought or essential to the jurisdiction of the court. (*Vide In re Dimock*, 32 N. Y. Supp., 927, and cases cited.) It follows that the objection should be

OVERRULED.