EDITH M. MUDGE, APPELLEE, V. CLIFFORD C. MUDGE, APPELLANT.

FILED DECEMBER 31, 1923.    NO. 22587.

1. **Process:** SERVICE OF SUMMONS. Under section 8574, Comp. St. 1922, the words "residence" and "usual place of residence" are generally synonymous with the term "domicile," hence the residence essential to confer jurisdiction upon the court is a legal one equivalent to the domicile of defendant.

2. **Domicile.** "The domicile of a defendant is that place where he has his fixed and permanent home, and to which, when absent, he has the intention of returning." *Wood v. Roeder*, 45 Neb. 311, followed.

3. ————: CHANGE OF DOMICILE. "To effect a change of domicile there must not only be a change of residence, but an intention to permanently abandon the former home. The mere residing at a different place, although evidence of the required intention, does not *per se* constitute a change of domicile." *Wood v. Roeder*, 45 Neb. 311, followed.

4. **Process:** USUAL PLACE OF RESIDENCE. Evidence examined, and *held* that the place of the service of the summons was, at the time of the service, the "usual place of residence" of the defendant.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Crossman & Munger,* for appellant.

*Mulfinger & Webb, John O. Yeiser* and *John O. Yeiser, Jr., contra.*

Heard before MORRISSEY, C. J., LETTON and DAY, JJ., REDICK, District Judge.

DAY, J.

Action by Edith M. Mudge against Clifford C. Mudge for separate maintenance. Summons was issued on August 9, 1919, and served on the defendant on August 11, 1919, by leaving a copy of the summons at the usual place of residence of the defendant. On October 11, 1919, the defendant appeared by his attorneys, and filed a special appearance

objecting to the jurisdiction of the court upon the ground that no legal service of summons was ever had on the defendant. The special appearance was overruled, default entered against defendant, and a decree entered granting to plaintiff separate maintenance, and ordering the defendant to pay a certain sum each month to the plaintiff for her support. Defendant appeals.

The only question presented by the record which we are called upon to determine goes to the sufficiency of the service of the summons to give the court jurisdiction. There is nothing upon the face of the return of the summons to indicate that it is irregular in any way, or that it does not recite the truth as to the manner of its service.

It is the contention of the defendant that the place where the summons was left was not the usual place of residence of the defendant at the time of the pretended service. This presents a question of fact to be determined by the record.

Section 8574, Comp. St. 1922, in force at the time, provides the manner of service of summons, as follows: "The service shall be by delivering a copy of the summons to the defendant personally, or by leaving one at his usual place of residence, at any time before the return day." The words "usual place of residence," as used in the statute, mean the place of abode at the time of the service. *Blodgett v. Utley,* 4 Neb. 25. In *Wood v. Roeder,* 45 Neb. 311, the court held: "The words 'residence' and 'usual place of residence,' as employed in the statutes, are generally synonymous with the term 'domicile,' hence the residence essential to confer jurisdiction is a legal one equivalent to the domicile of the defendant. The domicile of a defendant is that place where he has his fixed and permanent home, and to which, when absent, he has the intention of returning." In the same case it was held, to effect a change of domicile, there must not only be a change of residence, but an intention to permanently abandon the former home. With these principles of law in mind, we now proceed to examine the facts in the case under consideration.

The record shows that on May 4, 1919, the defendant,

under the name of Don C. Wallace, rented an apartment in the St. Regis apartment house in the city of Omaha. The lease ran for a period of one year from May 4, 1919, and called for the payment of a monthly rental of $70. About the date mentioned he commenced living in the apartment with a woman, other than his wife, whom he introduced as his wife, and who was generally known among the neighbors as "Mrs. Wallace." To all outward appearances it met all the requirements of a refined, well-regulated home of husband and wife. On August 1, 1919, the plaintiff, who with her daughter, the issue of her marriage with the defendant, had been living in Chicago, appeared in Omaha, and soon located the defendant living under the circumstances described in the St. Regis. The plaintiff immediately took steps to institute criminal proceedings against the defendant in the federal court for violating the Mann act, and also commenced a civil proceeding in which she sought to obtain possession of the furniture in the apartment, and also the present action for separate maintenance.

The defendant, learning that his wife had discovered his whereabouts, hurriedly left the St. Regis a few days prior to August 9, 1919. His paramour also left about the same time. On August 11, 1919, while the officers were executing the writ of replevin for the furniture, and had about one-half of it loaded on the moving van, the officer with the summons in the present action appeared at the apartment, and served the summons by leaving it on the mantel (one witness says it was left on the piano), in the apartment occupied by the defendant and his paramour. When the defendant and his companion left the apartment, they said nothing concerning their intention not to return. They made no arrangements about their rent, gas, or electric light service. Everything was left in the apartment as though they expected to return in a few hours. All the furniture, dishes and clothing were left. Provisions in the ice box were left, including bread, butter, and a bottle of Gordon gin. After their departure the janitor's wife received a note, signed "Mrs. Wallace," in which she states

that she would be detained three or four days longer than she expected, and requested the janitor's wife to use the perishable food in the ice box. In the showing made on behalf of the defendant, we are not favored with the personal testimony of the defendant, or with his affidavit. As to what his intention was with respect to abandoning the apartment in the St. Regis as his residence must be determined from the record. The moving out of the furniture was not done at his instigation. In fact, it was contrary to his wish. While not properly in the record, it was stated on the hearing that the furniture was afterwards recovered by the defendant. In the same way it appears that the defendant presented himself in the federal court, and plead guilty to a charge of violating the Mann act, and was fined $100, which he paid.

Considering the entire record, we are of the view that at the time of the service of the summons the usual place of residence of the defendant was the apartment occupied by him in the St. Regis apartment house, and that the manner of the service of the summons conferred jurisdiction on the court.

A very guarded suggestion is made by defendant's counsel, with the view of avoiding a general appearance, to the effect that the court erred in permitting the sheriff to amend his return on the summons. We think there is no merit in the suggestion. An amendment of the return to the summons to conform to the facts is well recognized in our practice.

The judgment of the district court is

AFFIRMED.