COMPTROLLER OF THE TREASURY
*v.* WESLEY N. MOLLARD

[No. 699, September Term, 1982.]

*Decided February 4, 1983.*

632

The cause was argued before MASON, WEANT and BISHOP, JJ.

*John K. Barry, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Gerald Langbaum, Assistant Attorney General,* on the brief, for appellant.

*Herman B. Rosenthal,* with whom were *Robert P. Mittelman* and *Semmes, Bowen & Semmes* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court.

In this appeal, Comptroller of the Treasury, Income Tax Division, urges us to reverse the order of the Baltimore City Court which had affirmed the order of the Maryland Tax Court. The Tax Court held that Wesley N. Mollard, appellee, was not domiciled in Maryland on the last day of taxable year 1976. Appellant Comptroller contends the Tax Court used the wrong legal litmus paper to test the intent required to establish a new domiciliary in Belgium.

Mollard was General Manager of International Telephone and Telegraph Corporation's (ITT) facility in Columbia, Maryland and had been a resident of Maryland since the early 1960's. In December of 1975 ITT decided to shut down the Columbia laboratory. Mollard sought comparable employment with several non-Maryland companies in the United States. Ultimately, in June of 1976, he accepted an ITT senior-management position in Brussels, Belgium.

Without rehashing all of the facts presented in this case, we note that the Tax Court found that the Mollards made as complete a move as people normally make when they abandon their old domicile and establish a new one.

Substantial evidence indicated the Mollards quickly became involved in Belgian society and became absorbed in the activities and life in Brussels. They took French lessons; they were elected officers of the Brussels Christian Youth Fellowship; they paid Belgian income taxes; Mr. Mollard joined a local chapter of a technical association and Mrs. Mollard joined the church choir, worship committee, and women's group; she also headed the Belgian Tours Organization; their minor child was enrolled in a local high school.

Article 81, § 229 (o) restricted the Baltimore City Court to reviewing whether the Tax Court's decision (i) was erroneous as a matter of law or (ii) was unsupported by substantial evidence appearing in the record. Because the Baltimore City Court basically adopted the position of the Tax Court, our review is limited to those two questions. Md. Rule 1085. We reverse the determination of the Baltimore City Court which we conclude was erroneous as a matter of law.

Both parties agree the Mollards were domiciled in Maryland up until the move to Belgium. Additionally, the Comptroller concedes the Mollards had no intention of returning to Maryland at the time of the move. The objective facts presented in this case were not inconsistent with a subjective intent to abandon their Maryland domicile. Substantial evidence appears in the record to support the Tax Court's finding that the Mollards had an intent to abandon their old domicile.

The intent to abandon is not determinative of the domicile question. The applicable principles are contained in the 1 Restatement of Conflict of Law 2d, § 19 at 78 (1971) and were adopted by the Court of Appeals in *Comptroller v. Lenderking,* 268 Md. 613, 618, 303 A.2d 402 (1973): one must always have a domicile, and a domicile, once established, will continue irrespective of change of residence until a new domicile is acquired. Thus, the short but not so simple issue is whether the Mollards established a new domicile in Belgium.

The Tax Court recognized this single issue as dispositive:

> The key inquiry here then, is whether the Mollard's move to Belgium was characterized by ties which bespeak an intention to remain there indefinitely, thereby demonstrating the acquisition of a superceding domicile.

After examining and weighing the various factors identified by Judge Eldridge in *Bainum v. Kalen,* 272 Md. 490, 499, 325 A.2d 392 (1974), as appropriate in deciding a person's domicile, the Tax Court held:

> While the facts in this case are close, we think the greater weight of the evidence supports the Petitioners' contention that they were domiciled in Belgium on the last day of the taxable year 1976.

In *Bainum, supra,* the Court of Appeals focused on the question of domicile generated by an interstate relocation. Where, however, the move is to a foreign country, the nature of the visa under which admission is granted is an essential inquiry when determining domicile.

Mollard was allowed to enter and live in Belgium on a restricted visa. In his brief appellee concedes "As the Comptroller correctly notes, . . . [the visa] that Mr. Mollard held in Belgium, is valid only for so long as the particular job for which it is granted remains the employment of the individual." Mollard was required to renew his visa every two years for an indefinite period. Renewals were granted provided he remained in the employ of ITT.

In *Toll v. Moreno,* 284 Md. 425, 397 A.2d 1009 (1979), the Court of Appeals addressed a question certified to that Court by the Supreme Court of the United States; namely, whether holders of G-4 visas were incapable as a matter of State law of becoming domiciliaries of Maryland. Much like the visa on which Mollard was admitted to Belgium,

> . . . G-4 aliens are admitted [to the U.S.] for an indefinite period — so long as they are recognized

by the Secretary of State to be employees or officers (or immediate family members of such employees or officers) of an international treaty organization. *[Elkins v. Moreno,* 435 U.S. 647, 666, 98 S.Ct. 1338, 55 L.Ed.2d 1338 (1978).]

The Court of Appeals held that G-4 visa holders could become domiciled in Maryland because, as decided by the Supreme Court, those individuals could stay in the U.S. even after terminating their employment with an international treaty organization thereby losing their G-4 status. Along the way, the Court of Appeals provided a rule:

If under federal law a particular individual [*i.e.,* a G-4 visa holder] must leave this country at a certain date, or cannot remain here indefinitely, then he could not become domiciled in Maryland. Any purported intent to live here indefinitely would be inconsistent with law. It would at most be an unrealistic subjective intent, which is insufficient under Maryland law to establish domicile. [284 Md. at 442-443.]

Unnecessary confusion enters this area because of the casual use of the word "indefinite." All G-4 visa holders "are admitted for an *indefinite period"* as long as they are employees or officers of an international treaty organization. It is clear in the above quote from *Toll, supra,* that "remain here *indefinitely"* meant an indefinite period *beyond* the individual's association with the treaty organization.

Thus, the Tax Court should not have engaged in a weighing of objective factors without first ascertaining the nature of Mollard's visa. Under *Toll v. Moreno, supra,* if Mollard would have been required to leave Belgium had he terminated his employment with ITT then he could not legally establish a Belgian domicile. A subjective intent to live in Belgium indefinitely beyond his employment with ITT would be ". . . inconsistent with law[,] . . . an unrealistic subjective intent, which is insufficient . . . to establish domicile."

In *Toll v. Moreno, supra,* the Court of Appeals held there was nothing inherent in the nature of a G-4 visa which would render the holder of such a visa incapable of establishing a Maryland domicile. Central to that holding was a determination by the Supreme Court that a G-4 alien could terminate his employment with an international treaty organization and "not necessarily be subject to deportation nor would he have to leave and re-enter the country in order to become an immigrant." *Elkins v. Moreno, supra,* 435 U.S. at 667. The Supreme Court came to that decision by construing Congress' restriction on intent for different nonimmigrant classes. Unlike most nonimmigrant aliens who are admitted on the express condition that they intend not to abandon a foreign residence or, conversely that they intend not to seek domicile in the United States, Congress imposed no restrictions on intent for G-4 nonimmigrant aliens.

It would appear necessary, therefore, to ascertain whether the terms of Mollard's visa were intended to restrict his intention to establish a Belgian domicile. We note with interest that Mollard's visa, unlike the G-4 visa, was valid for two years only. He would then have to present proof of continuing employment with ITT to obtain another two-year extension. However, under the facts and circumstances presented, we need not decide if the two-year visa subject to a condition of employment was intended as a restriction on intent to establish a Belgian domicile.

In this case there is no disagreement between the parties as to Mollard's subjective intent at the time of his move to Belgium. Their stay in Belgium was at the grace of ITT. The record clearly demonstrates that Mollard's commitment was to his job, ITT and not his "home," Belgium. Mollard was quite frank in his intention to follow the will of ITT and his expectation to return to the United States. The reason the Mollards were so sure they would not be returning to Maryland is that ITT, after closing the Columbia facility, had no position in Maryland appropriate for someone with Mollard's background. There was no evidence whatsoever

that Mollard considered staying in Belgium outside of his role as an ITT representative. By his own admission:

> At the time of your assignment to Brussels, what was your understanding as to its duration?
>
> [Mr. Mollard]: Well, it was looked upon and I saw it as a permanent assignment, with no real definite duration. And I would be there so long as I performed properly, or so long as the company desired to maintain that operation and didn't feel I was, you know, needed some place else.

Even though it is the taxpayer's intention *at the time of the move* that is important to the question of domicile, we think the following response shows that the original intent, as discussed above, never changed:

> When ITT told you they wanted you to come back, did you explore employment possibilities in Belgium?
>
> [Mr. Mollard]: No, I did not. . . .

Mollard, upon request by ITT, returned to the United States in May of 1978, twenty months after his initial assignment to Belgium.

Appellee argues that his intention to leave Belgium and return to the United States upon ITT's request at some unknown future date does not preclude him from establishing a Belgian domicile. Authority, or so appellee contends, for that proposition is found in *Shenton v. Abbott,* 178 Md. 526, 532-33, 15 A.2d 906 (1940):

> Of course, if a person has actually moved to a new abode, with the intention of remaining there for an *indefinite time,* and establishing it as a place of fixed present domicile, that place is to be deemed his domicile notwithstanding he may entertain a *floating intention to return* to his former domicile at some future time. [Emphasis added.]

In *Shenton v. Abbott, supra,* the Court of Appeals recognized this principle and then went on to consider the objective manifestations of subjective intent.

Unhappily for the taxpayer, Mollard's intention to return to the United States was not a "floating intention." It was definite as to the event, not when the event would occur. It was a fixed intention. Notwithstanding the uncertainty of his exact return date, the fact that he *would* return was certain enough to preclude his stay from being of the "indefinite" type discussed in *Shenton v. Abbott, supra.* The *definite* intention to return to the United States (even though not to Maryland) precluded Mollard from developing a sufficient intent to make Belgium his "true, fixed, permanent home and principal establishment." *Shenton v. Abbott, supra,* 178 Md. at 530. As noted in *Shenton*:

> But a change of residence, to enable a person to perform the duties of a civil office, whether elective or appointive, does not of itself constitute a change of domicile. No temporary residence, whether for purposes of *business,* health or pleasure, occasions a change of domicile. [Emphasis added.] [*Id.* at 530.]

We see no reason for distinguishing between an appointed civil official who has to change residence to fulfill his duties, and Mollard, a businessman, who is transferred by his employer to fulfill a corporate need.

Thus, Mollard's subjective intent is not dispositive of domicile if his limited Belgian visa was intended to restrict his intent. An intent inconsistent with law is unrealistic and insufficient to establish a domicile. On the other hand, if the Belgian visa was not intended to restrict Mollard's subjective intent, the fact that he intended and expected to return to the United States upon a summons by his

employer, without even considering other alternatives, is an insufficient intent to establish a new domicile.

*Judgment reversed.*

*Case remanded to the Baltimore City Court for remand to the Maryland Tax Court for the entrance of a judgment affirming the decision of the Comptroller of the Treasury.*

*Costs to be paid by the appellee.*