IN RE ESTATE OF JOY EVONE CRAVEN, DECEASED.
KATHERINE WEBB, APPELLANT, V. THOMAS CRAVEN,
PERSONAL REPRESENTATIVE OF THE ESTATE OF
JOY EVONE CRAVEN, DECEASED, APPELLEE.
654 N.W.2d 196

Filed December 20, 2002.  No. S-01-1223.

Michael S. Borders, of Sennett, Duncan & Borders, for appellant.

Michael A. England, of Stumpff, Guggenmos & England, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Katherine Webb appeals from the county court's decision determining that her deceased mother, Joy Evone Craven, was domiciled in Nebraska at the time of her death. The sole issue is whether Nebraska or Montana is her domicile. Joy died in Montana. She established a post office box in Montana, obtained a Montana driver's license, and registered a car there. But Joy checked on a change-of-address card filed with the postal service that she was making a temporary move. Furthermore, she had not told others that she planned to permanently move to Montana and had left many items at her home in Nebraska. Because the court's factual determination is not clearly erroneous, we affirm.

## BACKGROUND

This case is a dispute between Webb and Thomas Craven, Joy's estranged husband and personal representative of her estate, about Joy's domicile at the time of her death. Joy filed a petition to dissolve her marriage to Thomas in 1998, but the petition was pending at the time of her death.

Joy died in Montana on November 26, 1999. Thomas began an intestate proceeding in Nebraska in December 1999 and was informally appointed personal representative of her intestate estate in January 2000. Formal probate proceedings were filed in Montana by Webb on December 1, 2000. The record contains a document purported to be Joy's will, dated September 19, 1999. The will does not have a domiciliary clause. The record contains evidence about Joy's mental competence at the time the will was signed. The validity of the will, however, is not the subject of this

appeal. An application to determine Joy's domicile was filed in Nebraska in May 2001.

According to Webb, the pending divorce caused friction between members of the family. She stated that her sister, Terry Owens, and her half sister sided with Thomas, while Webb sided with Joy. Webb testified that in late 1998 and early 1999, Joy discussed with her the possibility of moving to Montana to live with her. According to Webb, Joy began making preparations to move in the spring and summer of 1999. Joy contacted a moving consultant in March 1999 for a cost estimate of moving her belongings from Mason City, Nebraska, to Montana. Joy told the consultant that she wanted to move in June. But Joy did not hire the company. Joy arrived at Webb's residence in Montana on September 1.

Joy established a post office box in Montana. The record contains a mail forwarding change-of-address form that Joy filed on September 1, 1999, with the postal service. Joy checked on the form that her change of address was temporary and listed April 1, 2000, as the date to discontinue forwarding her mail.

On September 9, 1999, Joy obtained a Montana driver's license, using the Montana post office box as her address. Joy opened a bank account in Montana in 1999, but she had also opened accounts there in 1992 or 1993. She also jointly licensed and insured a vehicle with Webb in Montana. According to Webb, Joy intended to stay in Montana. The record contains a photocopy of an envelope from the Social Security Administration addressed to Joy at her Montana address. The record does not reflect what was in the envelope.

In August 1999, Joy was diagnosed with cancer and was later hospitalized in Montana for treatment. Webb testified that Joy instructed her not to contact family members about the hospital stay. Joy died and was buried in Montana. Webb testified that in accordance with Joy's request, she informed the family of Joy's death after the burial by calling Terry's oldest son.

Terry testified that before Joy went to Montana, Joy was living alone in her home in Mason City, Nebraska, because after Joy and Thomas separated, Thomas had moved into Terry's home. Terry stated that Joy had previously taken long visits to Montana to see Webb and estimated the visits lasted about a

month. According to Terry, there was no initial tension among family members about the pending divorce, but that some tension later occurred.

Joy never told Terry that she intended to relocate permanently to Montana. Instead, Terry stated that during an August court hearing about the divorce, Webb stated that Joy was going to Montana to receive medical treatment. After Joy went to Montana, Terry called the hospitals there trying to locate her, but was unsuccessful.

Staci Owens, Terry's daughter, testified that she had a good relationship with Joy and stated that if Joy was going to permanently move to Montana, she would have told her. According to Staci, Joy did not tell her she planned to move to Montana. Staci stated that in the past, Joy would not talk to her in front of Webb.

After Joy's death, Terry and Thomas gained access to her house. The house was not for sale or rent, and the utilities were turned on. The record contains photographs of the home. In the photographs, the house is completely furnished with personal items displayed. There were live plants in the home and food left in the cupboards and freezer. The closets contained linens and personal belongings.

Joan Cox, a neighbor of Joy's in Mason City, testified that Joy asked her to watch the house while she was in Montana. Cox watered the plants and made sure the electricity was on. Someone else had been hired to mow the lawn. When Joy left for Montana, she said that she would be back in October for a hearing. She did not say whether she would return to Montana after that. In October, Cox was told that Joy was in the hospital and could not return for the hearing.

The court stated that the documentary evidence was contradictory because, while Joy had obtained a Montana driver's license, she also filed a form with the postal service stating that her mail forwarding would be temporary. Because the documentary evidence was in conflict, the court relied on the credibility of the witnesses and other evidence. The court then found that Joy's domicile was in Nebraska at the time of her death. Webb's motion for a new trial was overruled, and she appeals.

## ASSIGNMENT OF ERROR

Webb assigns that the county court erred by determining that Joy's domicile was in Nebraska instead of Montana.

## STANDARD OF REVIEW

■ In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *In re Estate of Krumwiede*, 264 Neb. 378, 647 N.W.2d 625 (2002).

## ANALYSIS

Webb contends that the court erred in its factual findings. Webb relies on Joy's presence in Montana at the time of her death and that she had registered a vehicle there. In particular, Webb emphasizes that Joy obtained a Montana driver's license and received mail from the Social Security Administration at her Montana address. Webb also disagrees with the court's determinations about the credibility of the witnesses. Thomas, however, counters that the evidence was contradictory about Joy's intention to move and argues that the court correctly considered the credibility of the witnesses.

■ Although there are various statutory procedures relating to the determination of domicile, the probate statutes do not provide a definition of domicile. See, e.g., Neb. Rev. Stat. § 30-2411 (Reissue 1995). We have said that " '[t]he term "domicile" is difficult of accurate definition, and it has been stated that the concept cannot be successfully defined so as to embrace all its phases. Its meaning, in each instance, depends upon the connection in which it is used.' " *In re Estate of Meyers*, 137 Neb. 60, 64, 288 N.W. 35, 37 (1939). It is universally held, however, that to acquire a domicile by choice, there must be both (1) residence through bodily presence in the new locality and (2) an intention to remain there. See, *Huffman v. Huffman*, 232 Neb. 742, 441 N.W.2d 899 (1989); *In re Estate of Meyers, supra*. Consequently, domicile is obtained only through a person's physical presence accompanied by the present intention to remain indefinitely at a location or by the present intention to make a location the person's permanent or fixed home. *Huffman v. Huffman, supra*.

We have stated that to change domicile, there must be an intention to abandon the old domicile. *In re Estate of Meyers, supra.* In addition, because the intent of a person is not readily susceptible of analysis, all of the surrounding circumstances and the conduct of the person must be taken into consideration to determine his or her domicile. *Id.*

In *In re Estate of Meyers*, the decedent owned a ranch in Arthur County, but had been living in Omaha, Douglas County. He was listed in the Omaha city directory and maintained a bank account in Omaha. There was evidence that he changed his residence to Omaha to benefit his health and obtain education for his daughter. But he also continued to maintain his business in Arthur County and was registered to vote there. The trial court determined that the decedent was domiciled in Arthur County.

On appeal, we stressed that the decedent was registered to vote in Arthur County and noted that all of the circumstances must be considered. We further stated that " '[a] change of residence for the purpose of benefiting one's health does not usually effect a change of domicile. Such a change is looked upon as temporary merely, even though the actual time spent in the new residence may be long.' " 137 Neb. at 67, 288 N.W. at 38.

Here, the court recognized evidence indicating that Joy may have intended to change her domicile to Montana. But the court also considered conflicting evidence. Although Joy obtained a Montana driver's license and registered a vehicle in Montana, she also listed her move as temporary on a form she filled out with the postal service. The record also contains photographs showing that Joy left a substantial amount of her belongings at her home in Nebraska. Although Webb testified that Joy intended to permanently relocate to Montana, others testified that Joy would have told them if that were the case. The record also allows the court to infer that Joy went to Montana to receive medical care. Thus, there was conflicting evidence about Joy's intent to change her domicile. In particular, there was evidence that she did not abandon her Nebraska domicile.

The court could reasonably infer that Joy traveled to Montana to receive long-term medical care but did not intend to permanently change her domicile. Webb argues, however, that the court's determinations about the credibility of the evidence and

the witnesses were in error. But the credibility of witnesses and the weight to be given their testimony are for the trier of fact. *In re Application of Jantzen*, 245 Neb. 81, 511 N.W.2d 504 (1994). The county court's decision is not clearly erroneous. Accordingly, we affirm.

AFFIRMED.