Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/09/2021 08:09 AM CDT

Thomas and Pamela Houghton, husband and
wife, appellants, v. Nebraska Department
of Revenue, an agency of the State
of Nebraska, and Tony Fulton,
Tax Commissioner, appellees.

___ N.W.2d ___

Filed January 15, 2021.    No. S-20-176.

1. **Administrative Law: Judgments: Appeal and Error.** In an appeal under the Administrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record.

2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Domicile: Intent.** To acquire a domicile by choice, there must be both (1) residence through bodily presence in the new locality and (2) an intention to remain there.

4. **Domicile.** All of the surrounding circumstances and the conduct of the person must be taken into consideration to determine his or her domicile.

5. **Domicile: Intent.** To change domicile, there must be an intention to abandon the old domicile.

6. ____: ____. To establish a new domicile, the present intention must be to remain indefinitely at a location or site or to make a location or site the person's permanent or fixed home.

7. **Judgments: Appeal and Error.** In conducting a review for errors appearing on the record, an appellate court will not substitute its factual findings for those of the district court where competent evidence supports those findings.

8. **Intent: Proof: Circumstantial Evidence.** Intent is a question of fact, which may be determined by circumstantial evidence.

9. **Domicile.** Where a person's move is to a foreign country, the nature of the visa under which admission is granted is an essential inquiry in determining the person's domicile.
10. **Domicile: Intent.** An individual's subjective intent is not dispositive of domicile if a limited visa of the foreign country is intended to restrict his or her intent, for an intent inconsistent with law is unrealistic and insufficient to establish a domicile.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

David S. Houghton, of Houghton, Bradford & Whitted, P.C., L.L.O., for appellants.

Douglas J. Peterson, Attorney General, and L. Jay Bartel for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

This Administrative Procedure Act appeal centers on whether income taxpayers abandoned their domicile in Nebraska and acquired a domicile in the United Kingdom (U.K.). The Tax Commissioner and the district court concluded that the taxpayers did not meet their burden of proof. Although the move to a foreign country presents an additional, unusual circumstance, our standard of review drives the outcome. Because competent evidence supported the district court's factual findings, we affirm its judgment.

## BACKGROUND
### Nebraska Department of Revenue Proceedings

In February 2016, the Department of Revenue issued to Thomas and Pamela Houghton a notice of proposed deficiency determination for individual income tax for tax years 2012 to

2014. Together, the notices identified the total amount of taxes, interest, and penalties due as $73,477.61.

The Houghtons protested the income tax deficiency determination and requested a redetermination that no money was due. They claimed that the U.K. was their domicile.

The Houghtons sought to challenge the constitutionality and validity of a Nebraska regulation. The regulation stated, in relevant part, that "[a]ny citizen residing outside the United States (U.S.) whose last domicile within the U.S. was within Nebraska will continue to be a Nebraska resident until the person . . . establishes residence as a permanent resident alien in a foreign country . . . ."[1] The Tax Commissioner declined to determine the validity of the regulation or to apply it. The district court likewise did not apply the regulation. During oral argument to this court, counsel for the Department of Revenue asserted that the regulation should not be relied upon here, and we have not done so.

In 2018, a hearing was held on the Houghtons' petition for redetermination of individual income tax. The evidence consisted of testimony by both of the Houghtons and an audit supervisor of the Department of Revenue, and documents submitted by the parties. The evidence established that Thomas has been in the "payments processing business" since 1987. He worked for ACI Worldwide until 1997 and again from October 2000 to December 2011. The Houghtons lived in Nebraska for most of Thomas' employment with ACI Worldwide. But on two occasions—from January 1990 to March 1992 and from December 2000 to October 2004—they lived in the U.K. During the latter stay, the Houghtons "were headed towards citizenship when the company requested that [Thomas] move back to the U.S."

Between 2008 and 2011, while residing in Nebraska, the Houghtons discussed living in the U.K. They decided that if they moved back to the U.K. for a third time, they would

---

[1] 316 Neb. Admin. Code, ch. 22, § 001.03A (2009).

stay and become citizens. There is no dispute that the Houghtons were domiciled in Nebraska prior to moving to the U.K. in 2011.

In October 2011, Thomas accepted employment with a U.K. company. The position was permanent rather than an assignment. They moved to the U.K. in December. Pamela testified that although it was their third time living in the U.K., "[t]his time it was not as an expat, it was a legitimate job [Thomas] was taking for long term."

In 2012, Thomas received compensation from ACI Worldwide related to his employment in Nebraska through December 2011. The Houghtons, who have continued to employ an accountant in Nebraska to prepare their federal and state income tax returns, filed a "Special Capital Gains/Extraordinary Dividend Election and Computation" form with their 2012 Nebraska tax return. On that form, Thomas signed beneath the following statement: "I hereby elect to receive the special capital gains/extraordinary dividend treatment provided under Neb. Rev. Stat. § 77-2715.09, and declare under penalties of perjury that to the best of my knowledge and belief, the capital stock described above qualifies for the special capital gains/extraordinary dividend election." That statute allows an election by a "resident individual."[2]

The Nebraska income tax returns that the Houghtons filed for tax years 2012 to 2014 listed their address in the U.K. They computed Nebraska tax using the schedule for nonresidents and partial-year residents. The Houghtons were taxed as residents of the U.K. during the tax years at issue. They used a U.K. accountant in connection with their U.K. income tax.

When the Houghtons left Nebraska in December 2011, they retained ownership of two properties in Nebraska. One, purchased in 2004, served as their primary residence until they moved to the U.K. The other, purchased in June 2011, was purchased with the intent that it be an investment property.

---

[2] See Neb. Rev. Stat. § 77-2715.09(1) (Reissue 2018).

Both were listed as rental property after the Houghtons moved to the U.K. Thomas explained that at the time of the 2011 purchase, the market was down, which made it a good time to buy but not a good time to sell. The Houghtons sold both Nebraska properties in 2017. Thomas testified that the markets made it "a good time to sell." The Houghtons also owned real estate in Georgia and California.

The Houghtons did not own property in the U.K. Thomas characterized purchasing property in the U.K. as "complicated." He elaborated that a purchase of property is generally on a 99-year lease—which is not attractive—and that freeholds are difficult to find. Further, moving capital from the United States into the U.K. is considered a "taxing event" by the U.K.

In March 2011, Thomas sought work permission from the U.K., including a dependency endorsement for Pamela. The Houghtons obtained a "Tier 2" general visa with a validity date from July 2011 to August 2014. In April 2014, the Houghtons received an extension of the Tier 2 general visa with an expiration date of August 2017. In May 2016, the Houghtons applied for indefinite leave to remain (ILR), which was granted in June. Thomas testified that a person has to live in the U.K. for 5 years before seeking ILR. Once a person obtains ILR status, he or she can live in the U.K. for life. After ILR is granted, a person must wait 12 months before applying to become a U.K. citizen. The Houghtons complied, and they were sworn in as British citizens in February 2018.

An individual seeking to become a U.K. citizen is allowed to be out of the country for 450 days during a 5-year window. The Houghtons began keeping a log of all of their travel "immediately from the time that [they] went over there with the intent of becoming naturalized citizens." The record contains a "schedule of absences," which Thomas testified is part of the submission for ILR and for naturalization. The document showed each of the Houghtons' absences from the U.K. from 2011 to May 2016, along with the reason for travel

and the number of days involved for each event. The schedule of absences showed that the Houghtons returned to Nebraska a number of times during 2012 through 2014, spending as many as 40 days in 2012 and as few as 14 days in 2014. The visits were typically family related.

During the relevant tax years, Thomas possessed driver's licenses in Nebraska, California, and the U.K. His Nebraska license expired in 2015, and he did not take any action to renew it. The Houghtons "used the Overseas Voting Act" to vote in the 2012 federal presidential election. When they moved from Nebraska, they resigned from their country club and sold their only vehicle. In the U.K., the Houghtons joined a country club and purchased two vehicles. They took all items of sentimental value with them to the U.K. They do not have any Nebraska bank or financial accounts, but they have checking and savings accounts in the U.K.

## Tax Commissioner's
### Determination

The Tax Commissioner determined that the Houghtons failed to sustain their burden of proof. He relied on Nebraska case law concerning domicile. The Tax Commissioner stated that the Houghtons' "right to remain within the [U.K.] had an expiration date" and that because they "did not have the right to remain in [the U.K.] beyond the expiration of their restricted work visas[,] there could not have been an intention to stay beyond that point." The Tax Commissioner determined that the Houghtons did not abandon their Nebraska domicile until they established permanent residency in the U.K. in 2016.

The Tax Commissioner noted two additional facts. One, the Houghtons' retention of their Nebraska real estate until they obtained ILR status, which led the Tax Commissioner to remark that if they were "forced to return to the United States their former residence would serve as a 'soft landing

spot.'" The other was Thomas' sworn statement of Nebraska resident individual status in connection with the special capital gains election in 2012.

## DISTRICT COURT PROCEEDINGS

The Houghtons filed a petition on appeal. They requested that the Tax Commissioner's decision be set aside. They also sought a determination that they were not subject to additional income taxation, interest, and penalties for tax years 2012 to 2014.

## DISTRICT COURT'S JUDGMENT

The district court affirmed the Tax Commissioner's determination. The court also relied on Nebraska case law setting forth how one acquires a domicile by choice.

The district court determined that the additional facts noted in the Tax Commissioner's order supported the Tax Commissioner's finding. With regard to the Houghtons' retention of their former Nebraska home, the court stated that it deferred to the Tax Commissioner's judgment as to credibility when it found that such retention supported the conclusion that the Houghtons did not abandon their Nebraska domicile until after they established permanent residency in the U.K. The court also agreed with the Tax Commissioner that the Houghtons' claim to not be Nebraska residents was inconsistent with the sworn statement by Thomas that he believed he was eligible for the special capital gains/extraordinary dividend election.

The district court considered whether the Houghtons' visas during the relevant tax years made them incapable of acquiring domicile in the U.K. It observed that the Houghtons' Tier 2 general visas were valid for 3 years only, that they contained a specific expiration date, and that the Houghtons did not apply for ILR during the relevant tax years because the U.K.'s immigration rules required them to complete a

minimum of 5 years of continuous employment before they became eligible to remain indefinitely. The court determined that the Houghtons' "intent to remain indefinitely in the [U.K.] during those years was inconsistent with [U.K.] law and was at most 'an unrealistic subjective intent,' which is insufficient to effect a change of domicile from Nebraska to the [U.K.]"

The Houghtons filed a timely appeal, which we moved to our docket.[3]

## ASSIGNMENTS OF ERROR

The Houghtons assign that the district court erred in (1) determining that their domicile remained in Nebraska because they failed to prove that they were domiciled in the U.K. during the relevant tax years and (2) affirming the Tax Commissioner's order.

## STANDARD OF REVIEW

Any final action of the Tax Commissioner may be appealed, and the appeal shall be in accordance with the Administrative Procedure Act.[4] In an Administrative Procedure Act review proceeding, the district court reviews the agency's decision de novo on the record of the agency and may affirm, reverse, or modify the decision of the agency or remand the case for further proceedings.[5]

[1,2] In an appeal under the Administrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record.[6] When reviewing an order of a district court under the

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[4] Neb. Rev. Stat. § 77-27,127 (Reissue 2018).

[5] *Kozal v. Nebraska Liquor Control Comm.*, 297 Neb. 938, 902 N.W.2d 147 (2017).

[6] *Ash Grove Cement Co. v. Nebraska Dept. of Rev.*, 306 Neb. 947, 947 N.W.2d 731 (2020).

Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[7]

## ANALYSIS

Each year, Nebraska imposes a tax on the entire income of every resident individual.[8] As relevant here, a "[r]esident individual" is "an individual who is domiciled in Nebraska . . . ."[9] Thus, the critical issue in determining whether the Houghtons' entire income was subject to taxation is whether they were domiciled in Nebraska.

[3,4] The requirements to establish domicile are well established. It is universally held that to acquire a domicile by choice, there must be both (1) residence through bodily presence in the new locality and (2) an intention to remain there.[10] All of the surrounding circumstances and the conduct of the person must be taken into consideration to determine his or her domicile.[11]

Although we have not addressed domicile in connection with an income taxation case, the parties do not suggest that we attribute a different meaning or requirements for establishing domicile in this context. The discussion most frequently arises in the context of jurisdiction for dissolution of marriage.[12] But we have repeated the same requirements

---

[7] *Id.*

[8] See Neb. Rev. Stat. § 77-2715(1) (Reissue 2018).

[9] Neb. Rev. Stat. § 77-2714.01(7) (Reissue 2018).

[10] *In re Estate of Craven*, 265 Neb. 41, 654 N.W.2d 196 (2002).

[11] *Id.*

[12] See, e.g., *Rozsnyai v. Svacek*, 272 Neb. 567, 723 N.W.2d 329 (2006); *Huffman v. Huffman*, 232 Neb. 742, 441 N.W.2d 899 (1989). See, also, *Lasu v. Lasu*, 28 Neb. App. 478, 944 N.W.2d 773 (2020); *Metzler v. Metzler*, 25 Neb. App. 757, 913 N.W.2d 733 (2018); *Catlett v. Catlett*, 23 Neb. App. 136, 869 N.W.2d 368 (2015).

for domicile in election-related cases,[13] probate matters,[14] and matters concerning medical expenses.[15]

[5,6] To change domicile, there must be an intention to abandon the old domicile.[16] To establish a new domicile, the present intention must be to remain indefinitely at a location or site or to make a location or site the person's permanent or fixed home.[17]

The Houghtons had the burden of proof[18] to show that they possessed the intent to abandon their Nebraska domicile and remain indefinitely in the U.K. "One's testimony with regard to his intention is, of course, to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts."[19]

The Tax Commissioner and the district court recited the same basic principles regarding establishment of a domicile. And they agreed that the relevant facts largely were not in dispute. Both the Tax Commissioner and the district court determined that the Houghtons failed to meet their burden of proof.

---

[13] See, *State v. Jensen*, 269 Neb. 213, 691 N.W.2d 139 (2005); *Krajicek v. Gale*, 267 Neb. 623, 677 N.W.2d 488 (2004); *State v. Jones*, 202 Neb. 488, 275 N.W.2d 851 (1979); *Dilsaver v. Pollard*, 191 Neb. 241, 214 N.W.2d 478 (1974).

[14] See, *In re Estate of Craven, supra* note 10; *In re Estate of Meyers*, 137 Neb. 60, 288 N.W. 35 (1939).

[15] See, *Gosney v. Department of Public Welfare*, 206 Neb. 137, 291 N.W.2d 708 (1980); *County of Kearney v. County of Buffalo*, 167 Neb. 117, 91 N.W.2d 304 (1958).

[16] *In re Estate of Craven, supra* note 10.

[17] See, *In re Estate of Craven, supra* note 10; *Metzler v. Metzler, supra* note 12.

[18] See Neb. Rev. Stat. § 77-2781 (Reissue 2018).

[19] *Dist. of Columbia v. Murphy*, 314 U.S. 441, 456, 62 S. Ct. 303, 86 L. Ed. 329 (1941).

[7] Our decision is driven by our standard of review. Importantly, our review is not de novo. Instead, we review the district court's order for errors appearing on the record. In conducting such a review, we will not substitute our factual findings for those of the district court where competent evidence supports those findings.[20]

[8] The record supports the district court's factual findings. Intent is a question of fact, which may be determined by circumstantial evidence.[21] The Houghtons' 2012 tax return shows that Thomas claimed to qualify for an election that is available only to a "resident individual,"[22] i.e., someone "*who is domiciled in Nebraska* or who maintains a permanent place of abode in this state and spends in the aggregate more than six months of the taxable year in this state."[23] The record also demonstrates that the Houghtons did not sell their former home in Nebraska until 2017. These factors do not demonstrate an intent to abandon their Nebraska domicile.

[9,10] The court's factual findings as to the Houghtons' visa status are also supported by the record. The evidence showed that the Houghtons' Tier 2 general visas were valid for 3 years with a specific expiration date. It also showed that they could not apply for ILR during the relevant tax years. "Where a person's move is to a foreign country, the nature of the visa under which admission is granted is an essential inquiry in determining the person's domicile."[24] An individual's subjective intent is not dispositive of domicile if a limited visa of

---

[20] See *Ash Grove Cement Co. v. Nebraska Dept. of Rev., supra* note 6.

[21] See, e.g., *In re Interest of Gabriella H.*, 289 Neb. 323, 855 N.W.2d 368 (2014); *In re Dissolution & Winding Up of Keytronics*, 274 Neb. 936, 744 N.W.2d 425 (2008); *State v. Kennedy*, 239 Neb. 460, 476 N.W.2d 810 (1991).

[22] § 77-2715.09(1).

[23] § 77-2714.01(7) (emphasis supplied).

[24] 28 C.J.S. *Domicile* § 21 at 79 (2019). See, also, *Comptroller of the Treasury v. Mollard*, 53 Md. App. 631, 455 A.2d 72 (1983).

the foreign country is intended to restrict his or her intent, for an intent inconsistent with law is unrealistic and insufficient to establish a domicile.[25] The district court determined that the Houghtons' intent to remain indefinitely in the U.K. during the tax years at issue was inconsistent with U.K. law. The record contains competent evidence to support this finding, and the court's decision conforms to the law.

## CONCLUSION

The district court's decision that the Houghtons failed to prove they were domiciled in the U.K. during the tax years at issue conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Because we find no errors appearing on the record, we affirm the judgment of the district court.

AFFIRMED.

MILLER-LERMAN, J., concurring in the result.

I concur in the result reached by the court which affirms the district court's affirmance of the order of the Tax Commissioner which found a tax deficiency in the tax returns of the Houghtons for 2012, 2013, and 2014. However, I believe the district court unreasonably found that the taxpayers' election to receive the special capital gains/extraordinary dividend treatment under Neb. Rev. Stat. § 77-2715.09 (Reissue 2018) in 2012 was probative of their residential status in 2013 and 2014. But because the 2012 election was merely a secondary reason upon which the Tax Commissioner relied in reaching its finding that the taxpayers were residents of Nebraska in all 3 years, the district court's erroneous finding was not consequential.

Section 77-2715.09(1) provides:

Every resident individual may elect under this section to subtract from federal adjusted gross income, or for

---

[25] 28 C.J.S., *supra* note 24; *Comptroller of the Treasury v. Mollard, supra* note 24.

trusts qualifying under subdivision (2)(c) of this section
from taxable income, the extraordinary dividends paid on
and the capital gain from the sale or exchange of capital
stock of a corporation acquired by the individual (a) on
account of employment by such corporation or (b) while
employed by such corporation.

For tax year 2012, the taxpayers signed "Form 4797N,"
which provides: "I hereby elect to receive the special capi-
tal gains/extraordinary dividend treatment provided under
Neb. Rev. Stat. § 77-2715.09 and declare under penalties
of perjury that to the best of my knowledge and belief, the
capital stock described above qualifies for the special capi-
tal gains/extraordinary dividend election." As noted, under
§ 77-2715.09(1), only Nebraska residents may elect to receive
special capital gains treatment. But § 77-2715.09(2)(a) pro-
vides that "[e]ach individual shall be entitled to one election
under subsection (1) of this section during his or her lifetime
for the capital stock of one corporation."

The fact that taxpayers took the election in 2012 is proba-
tive of their residency in 2012. However, because the election
was not available to taxpayers in 2013 and 2014 by virtue of
§ 77-2715.09(2)(a), no logical inference based on taking the
election in 2012 can be imposed on tax years 2013 and 2014.

In its order, the district court found that the claim of taxpay-
ers that "they were not Nebraska residents during the relevant
tax *years* is inconsistent with [Thomas] Houghton's sworn
statement made on the Form 4797N." (Emphasis supplied.)
Given the statutes, this finding is not warranted.

Taxpayers took the one-time claim in 2012, which supports a
finding that, for tax purposes, they were residents of Nebraska
in 2012. But in 2013 and 2014, they cannot be faulted for not
taking an election to which they were not entitled and no infer-
ence should be drawn from their forbearance from taking an
unavailable election.

Taking the election in 2012 tells us nothing about the tax-
payers' claim of residential status in 2013 and 2014, much

less that their inaction was inconsistent with their claim of Nebraska residency in 2012. But, in any event, because the Tax Commissioner only referred to the 2012 election as an additional fact after having already found Nebraska residency for all 3 years based on other evidence, the district court's ultimate conclusion to affirm the Tax Commissioner's order was not error.