STATE OF NEBRASKA, APPELLEE, V.
JUSTIN JENSEN, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V.
EARLEEN JENSEN, APPELLANT.

691 N.W.2d 139

Filed January 21, 2005.    Nos. S-04-314, S-04-315.

Amy A. Miller, of American Civil Liberties Union Foundation of Nebraska, for appellants.

Jon Bruning, Attorney General, and Kevin J. Slimp for appellee.

Danielle Nantkes for amicus curiae Nebraska Appleseed Center for Law in the Public Interest.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Antelope County Court concluded that neither Earleen Jensen nor Justin Jensen was a resident of the village of Royal, Nebraska, for purposes of an election held there on November 5, 2002. The county court found them guilty of illegal voting, in violation of Neb. Rev. Stat. § 32-1528 (Reissue 2004). Earleen and Justin appeal from orders of the Antelope County District Court which affirmed the judgments of the county court.

## SCOPE OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeal, and as such,

its review is limited to an examination of the county court record for error or abuse of discretion. *State v. Styskal*, 242 Neb. 26, 493 N.W.2d 313 (1992).

■ Both the district court and the Nebraska Supreme Court generally review appeals from the county court for error appearing on the record. *Id.*

## FACTS

Earleen married Marlowe Jensen in 1962, and they lived on a farm located 1 mile north and 1 mile west of Royal, which at the time of trial had a population of 70 to 75 residents. The farm is located in the Verdigre township voting precinct, which is separate from the Royal township voting precinct.

Justin, one of Earleen and Marlowe's children, grew up on the farm and developed diabetes at a young age. In 1986, he purchased a home located on Ryan Street in Royal. He lived there for 1½ years and then moved out of town. His health subsequently deteriorated, and he moved back to Royal in 1996. He registered to vote using the Ryan Street address, and he voted regularly in both primary and general elections prior to November 2002.

Justin testified that he split his time between the Ryan Street home and his parents' farm. Justin has "brittle diabetes," which has caused him to have periodic hypoglycemic attacks. During these attacks, he may become violent and need to be restrained. Because of this health condition, Justin often required care during the night and, therefore, spent most nights at the farm.

Marlowe retired in 1994 and moved with Earleen into a home located on Johnson Street in Royal. However, Marlowe moved back to the farm after approximately 2 months. Earleen registered to vote using the Johnson Street address and voted regularly in the primary and general elections before November 2002.

Earleen testified that when Justin's health condition worsened, she started spending nights with him and taking care of him on a daily basis. They would spend the night at the farm when Justin's blood sugar was low, and she might need help from Marlowe to administer Justin's insulin injections. She stated that due to Justin's present medical condition, it was impossible for her to stay at the Johnson Street home.

At the May 2002 primary election, election officials questioned whether Earleen and Justin resided in Royal or in the Verdigre

township voting precinct. Helen Mitteis, an election official, was familiar with the voting records of Earleen and Justin. She testified that she had not known Justin to vote outside Royal. Justin was questioned again during the November 2002 general election. Regardless, Earleen and Justin were each allowed to cast a ballot in the November 2002 general election in the race for Royal village trustee. Their voting in the village trustee contest formed the basis for the criminal charges at issue.

Earleen and Justin were charged in separate complaints with unlawfully voting in a school district, a village, or a precinct of a city in which they did not actually reside or into which they came for merely temporary purposes. See § 32-1528. The cases were consolidated for trial in the county court for Antelope County.

The county court found that Justin had lived at several locations between 1987 and 1996. He purchased the Ryan Street home in 1986. He lived at that location for about 1½ years and had moved several times since then. The court noted that Justin had the house moved to a central location on the Ryan Street lot and had installed new siding and windows. The court found that according to Earleen, she and Justin needed to live at the farm so that Marlowe would be available if Earleen needed help with Justin. It found that due to Justin's diabetes, he could not live alone but that his stated intent was to live independently at some point. From 1996 to November 2002, Justin averaged, on a monthly basis, 5 to 10 nights sleeping at the Ryan Street home and 20 to 26 nights sleeping at the family farm. It was not disputed that Justin cast a ballot in the Royal village trustee election on November 5, 2002.

The county court concluded that Justin's testimony concerning the extent of his stays at the family farm demonstrated a lack of "habitual habitation" at the Ryan Street home, which the court stated was necessary to render the same his residence for voting purposes, and that Justin was not an actual resident of Royal for purposes of the village trustee election on November 5, 2002. It found Justin guilty of illegal voting as charged in the complaint.

As to Earleen, the county court found that her "residential activity" on or before November 5, 2002, established beyond a reasonable doubt that she was not a resident of the village of Royal. The court concluded that Earleen's statements that it was

impossible for her to live at the Johnson Street home and that she planned to have her domicile there did not indicate a present intention to reside at that location. It found that Earleen, by her own admission, was not habitually present at the Johnson Street home and that, thus, she lacked the coexistence of fact and intention to establish the Johnson Street home in Royal as her residence for purposes of voting in the November 2002 general election. The court found Earleen guilty of illegal voting as charged in the complaint.

The county court's decisions were appealed to the district court for Antelope County, which affirmed the convictions and sentences. Earleen and Justin appeal.

## ASSIGNMENTS OF ERROR

Earleen and Justin assign the following errors to the Antelope County District Court, which affirmed the judgments of the Antelope County Court: (1) The court erred in finding that Earleen and Justin were not residents of the village of Royal, (2) the court erred in its application of the law, (3) the court erred in not considering Justin's disability, and (4) the court erred in finding Earleen and Justin guilty of illegal voting.

## ANALYSIS

Earleen and Justin were convicted of violating § 32-1528, which states: "Any person who votes a ballot in any school district, village, or precinct of a city in this state in which he or she does not actually reside or into which he or she has come for merely temporary purposes shall be guilty of a Class III misdemeanor." The issue is whether Earleen and Justin resided in the Royal township voting precinct for purposes of the November 2002 village trustee election.

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeal, and as such, its review is limited to an examination of the county court record for error or abuse of discretion. *State v. Styskal*, 242 Neb. 26, 493 N.W.2d 313 (1992). Both the district court and the Nebraska Supreme Court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a district court judgment for errors appearing on the record, an appellate court nonetheless has an obligation to resolve questions of law

independently of the conclusions reached by the trial court. See *Vlasic Foods International v. Lecuona*, 260 Neb. 397, 618 N.W.2d 403 (2000).

Pursuant to Neb. Rev. Stat. § 32-116(1) (Reissue 2004), the term "residence" means

> that place in which a person is actually domiciled, which is the residence of an individual or family, with which a person has a settled connection for the determination of his or her civil status or other legal purposes because it is actually or legally his or her permanent and principal home, and to which, whenever he or she is absent, he or she has the intention of returning.

In *Krajicek v. Gale*, 267 Neb. 623, 677 N.W.2d 488 (2004), we stated that domicile must be determined from all the circumstances taken together in a particular case and that in order to establish a domicile, two essential facts must be present: (1) residence, or bodily presence, in the locality and (2) an intention to remain there. No exact definition can be given of domicile. It depends upon no one fact or combination of circumstances, but from the whole taken together, it must be determined in each particular case. *State v. Jones*, 202 Neb. 488, 275 N.W.2d 851 (1979). A person may have two places of residence, but only one of them may be his domicile. *Id.*

"For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Choctaw Indian Band v. Holyfield*, 490 U.S. 30, 48, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989). Accord *Texas v. Florida*, 306 U.S. 398, 59 S. Ct. 563, 83 L. Ed. 817 (1939). One acquires a "domicile of origin" at birth, and that domicile continues until a new one, a "domicile of choice," is acquired. See *In re Estate of Jones*, 192 Iowa 78, 81, 182 N.W. 227, 228 (1921).

One fact of particular significance in ascertaining a person's domicile is the act of registering and voting. See *In re Estate of Meyers*, 137 Neb. 60, 288 N.W. 35 (1939).

> "In doubtful cases particular significance should be attached to the repeated exercise of the right to vote, because this right depends upon citizenship and domicile, and must be generally, if not universally, supported by the oath of the

voter. [S]uch act is a distinct, unequivocal and public assertion by the voter of his legal domicile." *Id.* at 66, 288 N.W. at 38 (quoting *Cooper's Adm'r v. Commonwealth*, 121 Va. 338, 93 S.E. 680 (1917)). " 'It is not residence alone, but it is the intention of the person, expressed or implied from the facts in evidence, conjoined with residence, that determines domicile.' " *In re Estate of Meyers*, 137 Neb. at 67, 288 N.W. at 38 (quoting *Reed's Will*, 48 Or. 500, 87 P. 763 (1906)).

Justin testified that when he returned to Royal in 1996, he moved his belongings to the Ryan Street home and registered to vote using the Ryan Street address. He stated that he intended to live there full time once his medical condition improved. His driver's license, which was issued prior to the 2002 general election, listed the Ryan Street home as his address. He testified as to improvements that he had made to the house, including a new foundation and basement. The house had been moved to a different location on the lot. He had installed siding on the exterior of the house. These improvements were made before the general election in November 2002.

The State showed that prior to the 2002 general election, Justin split his time between the Ryan Street home and the farm. He spent most of the days at the Ryan Street home but spent only 5 to 10 nights per month there due to his diabetic condition. The remaining nights were spent at the farm.

Earleen testified that her belongings had been at the Johnson Street home since she moved there in 1994. She intended for the Johnson Street residence to be her home even though it was impossible for her to stay there due to the daily care she was required to administer to Justin. She intended to return to the Johnson Street home once Justin's medical condition improved.

Earleen had been registered to vote in Royal since 1994 and had been a diligent voter. She had a newspaper delivered to the Johnson Street home, and her driver's license listed the home as her address. A number of her vehicles were registered using the Johnson Street address. She had made improvements to the Johnson Street home prior to the general election in November 2002.

" 'The question of what is residence is one of law to be determined by the consideration of the intention and overt acts of

the person whose acts are being examined.' " *State, ex rel. Brazda, v. Marsh,* 141 Neb. 817, 828, 5 N.W.2d 206, 213 (1942). In *State v. Jones,* 202 Neb. 488, 275 N.W.2d 851 (1979), we recognized that a person may have two residences but that only one of them is his domicile. Domicile must be determined from all the circumstances taken together in a particular case. *Krajicek v. Gale,* 267 Neb. 623, 677 N.W.2d 488 (2004).

The county court concluded that Justin's testimony concerning the extent of his stays at the family farm demonstrated a lack of "habitual habitation" at the Ryan Street home, which the court felt was necessary to render the home his residence for voting purposes. We conclude that the county court erred in concluding that "habitual habitation" was necessary to establish residence for voting purposes, because whether a voter is habitually present at a particular residence is not dispositive of the issue of domicile for purposes of § 32-1528.

Although § 32-1528 includes the phrase "actually reside," it does not require habitual presence. Prior to amendment, Neb. Rev. Stat. § 32-107 (Reissue 1993) provided: "Residence shall mean that place at which a person has established his home, where he is habitually present, and to which when he departs he intends to return." However, § 32-107 was amended in 1994, see 1994 Neb. Laws, L.B. 76, and the definition of residence for purposes of the Election Act is now found in § 32-116(1), which states that a residence is "that place . . . with which a person has a settled connection for the determination of his or her civil status or other legal purposes."

There were only two places where Justin had any type of "settled connection"—the family farm and the Ryan Street home. As noted in *In re Estate of Craven,* 265 Neb. 41, 654 N.W.2d 196 (2002), the term "domicile" is difficult to accurately define, and it has been stated that the concept cannot be successfully defined so as to embrace all its phases. Its meaning, in each instance, depends upon the connection in which it is used. See, also, *In re Estate of Meyers,* 137 Neb. 60, 288 N.W. 35 (1939).

Considering all the circumstances taken together, see *Krajicek v. Gale, supra,* we conclude that the county court erred in its determination that Justin did not reside in the village of Royal. Justin had bodily presence at the Ryan Street home and

expressed his intention to remain there by making improvements to the house and spending 5 to 10 nights per month there. Although Justin split his time between the Ryan Street home and the farm, that fact does not establish that his residence was other than the Ryan Street home. Justin more than adequately explained that his reason for staying at the family farm was his diabetic condition, and he evidenced his intention to have the Ryan Street home as his domicile. In *In re Estate of Meyers*, 137 Neb. at 67, 288 N.W.2d at 38, we stated: " 'A change of residence for the purpose of benefiting one's health does not usually effect a change of domicile. Such a change is looked upon as temporary merely, even though the actual time spent in the new residence may be long.' " Further, Justin's repeated exercise of voting in the Royal elections since 1996 was a public assertion which clearly established his intent to have the Ryan Street home as his domicile.

As to Earleen, the county court concluded that her "residential activity" established beyond a reasonable doubt that she was not a resident of the village of Royal. The court based its conclusion in part upon Earleen's statement that it was physically impossible for her to stay in Royal because of the constant attention required by Justin's diabetic condition. It also concluded that Earleen was not habitually present at the Johnson Street home. It found that she and Justin stayed at the family farm so Marlowe could help her with Justin's care and that Earleen planned to have her legal domicile at the Johnson Street home in Royal.

The county court erred when it concluded that Earleen was not a resident of the village of Royal. Earleen had physical presence at the Johnson Street home since 1994, and she had an intention to remain there. The fact that her stay at this location was interrupted because of the constant attention required by Justin's medical condition did not establish that she resided at the family farm. Earleen had not abandoned the Johnson Street home despite the fact that she stayed at the family farm in order to care for Justin. She had a settled connection with the Johnson Street home, which connection she established in 1994, and she had the intention of someday returning to that location.

## CONCLUSION

For the reasons set forth herein, we conclude that the county court erred in finding Earleen and Justin guilty of violating

§ 32-1528, and the district court erred in affirming the judgments of the county court.

The judgments of the district court are reversed, and the causes are remanded to the district court with directions to reverse the judgments of the county court and instruct the county court to dismiss the complaints against Earleen and Justin with prejudice.

REVERSED AND REMANDED WITH DIRECTIONS.