Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:04 AM CST

Phyllis Acklie, individually and as Personal
Representative of the Estate of Duane Acklie,
deceased, appellant, v. Nebraska Department
of Revenue, a Nebraska administrative
agency, and Tony Fulton, in his capacity
as the State Tax Commissioner for the
State of Nebraska, appellees.

___ N.W.2d ___

Filed December 9, 2022.    No. S-21-985.

1. **Administrative Law: Judgments: Appeal and Error.** In an appeal under the Administrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record.

2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Administrative Law: Words and Phrases.** A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.

4. **Words and Phrases.** A capricious decision is one guided by fancy rather than by judgment or settled purpose.

5. ____. The term "unreasonable" can be applied to a decision only if the evidence presented leaves no room for differences of opinion among reasonable minds.

6. **Domicile: Intent.** To acquire a domicile by choice, there must be both (1) residence through bodily presence in the new locality and (2) an intention to remain there.

7. **Domicile.** All of the surrounding circumstances and the conduct of the person must be taken into consideration to determine his or her domicile.

8. **Domicile: Intent.** To change domicile, there must be an intention to abandon the old domicile.
9. ____: ____. To establish a new domicile, the present intention must be to remain indefinitely at a location or site or to make a location or site the person's permanent or fixed home.
10. **Judgments: Appeal and Error.** In conducting a review for errors appearing on the record, an appellate court will not substitute its factual findings for those of the district court where competent evidence supports those findings.
11. **Intent: Proof: Circumstantial Evidence.** Intent is a question of fact, which may be determined by circumstantial evidence.
12. **Domicile.** Domicile depends upon no one fact or combination of circumstances, but from the whole taken together, it must be determined in each particular case.
13. **Domicile: Presumptions.** Where facts are conflicting or where there is any reasonable doubt, the presumption is in favor of an original, or former, domicile, as against an acquired one.
14. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Timothy L. Moll, of Rembolt Ludtke, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and L. Jay Bartel for appellees.

MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ., and MARSH, District Judge.

CASSEL, J.

## INTRODUCTION

The primary issue in this Administrative Procedure Act appeal is whether the taxpayers proved that they abandoned their domicile in Nebraska and acquired a domicile in Florida. The Tax Commissioner and the district court concluded that the taxpayers failed to meet their burden of proof. Because competent evidence supported the district court's factual

findings and its decision conformed to the law, we affirm its judgment.

## BACKGROUND

This appeal involves the Nebraska income tax returns of Duane Acklie and Phyllis Acklie for the period beginning on January 1, 2010, and continuing through December 31, 2014 (the audit period). In other words, the audit period covered five calendar-year tax years: 2010, 2011, 2012, 2013, and 2014. The Acklies were married at all times during the audit period and filed income tax returns as married filing jointly.

The Acklies filed Nebraska income tax returns as residents of Nebraska for tax years prior to 2008. But for tax years 2008 through 2014, the Acklies filed Nebraska income tax returns claiming status as nonresidents of Nebraska. The Nebraska Department of Revenue (Department) did not audit the Acklies for the 2008 or 2009 tax years, and no adjustments were made to those returns.

### Department Proceedings

The Department sent the Acklies notices of proposed deficiency determinations for each tax year of the audit period. The notices all stated that the Acklies "are Nebraska residents." Some of the notices added that the Acklies "maintained a permanent place of abode," while others cited the statute defining "[r]esident individual."[1]

The Acklies filed petitions for a redetermination. They protested the entire amount of the tax, interest, and penalties proposed by the Department for each of the tax years. The Acklies claimed that they were not domiciled in Nebraska during the relevant years and that they did not spend more than 6 months in Nebraska.

A hearing officer for the Department conducted a hearing on behalf of the Tax Commissioner. For purposes of the hearing,

[1] Neb. Rev. Stat. § 77-2714.01(7) (Reissue 2018).

the parties stipulated to a number of facts. They also stipulated to the amount of tax owed if both of the Acklies were Nebraska residents for the entire audit period and to the Acklies' having no tax due if they were not residents of the state. In this opinion, we have omitted the property valuations shown in the record.

The evidence established that each of the Acklies was born in Nebraska in the 1930s. In 1971, the Acklies acquired Crete Carrier Corporation—a large trucking company based in Lincoln, Nebraska. During the audit period, the Acklies each possessed approximately a 1-percent ownership interest in Crete Carrier Corporation. Also during the audit period, each of the Acklies served as a director of the corporation and received compensation. During the 2010 to 2012 tax years, the corporation listed the Acklies as salaried Nebraska employees for purposes of filings with the Department in order to meet requirements to qualify for a "Nebraska Tax Incentive Program LB 775." For purposes of the incentive program, the Department determined that the Acklies were nonresidents for the fiscal years September 30, 2008, through September 30, 2012. This determination was based in part on the Acklies' filing "a Form 12N, which is the Nebraska nonresident income tax agreement."

Each of the Acklies owned a residence in Lincoln during the entirety of the audit period. They used the residence owned by Phyllis for residential purposes when they were in Lincoln. The Acklies did not use the residence owned by Duane for personal residential purposes; instead, they made it available to others for recreational use.

The parties owned several investment properties in Lancaster County, Nebraska, which they leased for payments of cash rent. In 2011, Phyllis purchased a 516.75-acre farm. In 2012, she purchased a 135.93-acre farm. The Acklies owned a 25.03-acre commercial property until they transferred it to Crete Carrier Corporation in December 2013 as part of a like-kind exchange for property in Madison County,

Nebraska. While the Acklies owned the property, they held it for investment purposes and leased the property to Crete Carrier Corporation in exchange for payments of cash rent.

The Acklies owned 10 farm properties in Madison County. They held the properties for investment purposes and leased them to third-party tenants in exchange for payments of cash rent. The property tax statements for the properties were mailed to a post office box in Lincoln.

The Acklies owned property in other states, too. In 1993, they purchased a residence in Colorado, which they used for residential purposes. In 1997, the Acklies purchased a residence in Florida, which they used for residential purposes. The Acklies acquired two farm properties in Minnesota during the audit period. They held the properties for investment purposes and leased them to third-party tenants in exchange for payments of cash rent. The property tax statements for the Minnesota properties were mailed to a post office box in Lincoln.

In 2008, the Acklies took a number of important actions in Florida. They moved "additional personal property" from their residence in Nebraska to their residence in Florida, though the record reveals no further information about the contents of this property. They obtained Florida driver's licenses. They registered vehicles in their names. They registered to vote and exercised the right to vote in Florida elections. Phyllis completed paperwork and was approved to obtain a Florida homestead exemption for the Florida residence. In the proof-of-residence section of the application, Phyllis stated that she "last became a permanent resident of Florida" on December 25, 2007. Phyllis' signature on the application appeared beneath a statement in which she declared, under penalties of perjury, that she was a permanent resident of Florida.

The Acklies had other ties to Florida. They became members of various organizations based in Florida, including a church and a country club. They maintained personal bank accounts with a bank in Florida and had statements mailed to their Florida residence. They established professional and

business relationships in Florida during the relevant period, including a relationship with an attorney. In 2012, the Acklies obtained updated passports, which identified them as residents of Florida. If called to testify, Phyllis would testify that the Acklies intended to change their domicile from Nebraska to Florida.

The Acklies retained connections to Nebraska. Their two living daughters resided in Lincoln. During the audit period, they maintained a senior golf membership at a country club in Lincoln. The Acklies had vehicles, a jet ski, a boat, and a boat trailer registered in Nebraska. During the audit period, Duane made 44 political contributions (approximately 15 percent of the total dollar amount of political contributions) to Nebraska entities or candidates where the receipt listed a Nebraska address, 5 contributions (approximately 5 percent) to national political entities where the receipt listed his Florida address, and 34 contributions (approximately 80 percent) to national political entities or to entities or candidates outside Nebraska and Florida where the receipt listed a Nebraska address. Political contributions by Phyllis all listed her Nebraska residence on the receipt. The Acklies also served as directors, honorary board members, or trustees for several Nebraska entities during the audit period. Some of these positions paid director fees. In 2015, an entity named Duane "Nebraskan of the Year," though there was no requirement that the recipient be a current resident of Nebraska in order to receive the award.

In 2010, Duane executed a will in Nebraska that was prepared by a law firm in Nebraska. In 2013, Duane executed in Florida a codicil to his will; the codicil stated that he was "now of Collier County, Florida." In the codicil, Duane "revoke[d] and delete[d] all references to Nebraska and the laws of that state and insert[ed] in lieu thereof references to Florida and the laws of that state." Duane died in 2016. His remains were interred in a Nebraska cemetery. His obituary was published in

newspapers in Nebraska and Florida. In 2017, Phyllis filed a petition for determination of inheritance tax and an inheritance tax worksheet in Madison County. The petition and worksheet reported Duane's domicile as being in Florida.

The parties stipulated that the Department issued a Nebraska Individual Income Tax Booklet for each year in the audit period. The booklets for 2010, 2011, and 2012 defined "[r]esident" as "[a]n individual who is domiciled in Nebraska or who maintained a permanent place of abode and resided in Nebraska for six months or more during [the tax year]." The booklets for 2013—published in January 2014—and 2014—published in January 2015—expanded the definition of "resident," which included language stating:

> If an individual maintains a permanent place of abode in Nebraska and is present in Nebraska for at least 183 days during the tax year, that individual is a Nebraska resident even if living in another state. For this purpose, Nebraska considers any part of a day spent in Nebraska as a full day spent in the state.

The hearing officer received a "Location Summary" for each of the Acklies during each year of the audit period. The summaries displayed their travels and tracked days outside Nebraska and Florida, full days in Florida, partial days in Nebraska, and full days in Nebraska. The summaries showed that the Acklies traveled extensively. The partial days in Nebraska represented arrivals and departures; some partial days included being in Nebraska for as little as 2 hours. The Acklies would often arrive in Omaha, Nebraska, in the afternoon or evening and depart from Omaha in the morning.

## Tax Commissioner's Determination

The Tax Commissioner entered a 23-page order denying the Acklies' petitions for redetermination. The Tax Commissioner observed that several actions favored the Acklies' intentionally changing their domicile to Florida, but that other actions favored retaining Nebraska as a domicile.

The Tax Commissioner wrote extensively on the relative amount of time spent in each jurisdiction. The Tax Commissioner concluded that the Acklies spent over 6 months per year in Nebraska when partial days in the state were included. The Tax Commissioner recognized that was not true in 2014, "where it was close, but not sufficient to pass the second test for residency," but stated that the factors for the domicile test established residency status for 2014.

### District Court Proceedings

Phyllis, individually and as personal representative of Duane's estate, filed a petition for review in the district court. Her actions in these capacities will also be referenced as actions by the Acklies. The Acklies alleged that the Department improperly determined for the audit period that they (1) were domiciled in Nebraska, (2) spent in the aggregate more than 6 months of the taxable year in Nebraska, (3) were required to report and pay individual income tax as Nebraska residents, and (4) should be assessed penalties.

### District Court's Judgment

The district court determined that the Acklies were residents of Nebraska during the audit period, because they were domiciled in Nebraska in each of those years. The court emphasized the alternative language of § 77-2714.01(7) defining a resident individual: "an individual **who is domiciled in Nebraska or who maintains a permanent place of abode in this state and spends in the aggregate more than six months of the taxable year in this state.**" (Emphasis in original.) The court stated that tables for Duane and Phyllis showing their respective days outside Florida and Nebraska, full days in Florida, partial days in Nebraska, and full days in Nebraska for each of the relevant tax years "clearly show that Duane and Phyllis spent considerably more time in Nebraska than in Florida for each year of the [a]udit [p]eriod, when counting partial days in Nebraska."

The court found that the Acklies failed to meet their burden of proof to show, for each relevant tax year, that they had the present intention to abandon their Nebraska domicile and remain indefinitely in Florida. It determined that evidence to support the Acklies' assertion that they established a new domicile in Florida in 2008 was outweighed by substantial evidence of conduct during the audit period that was inconsistent with an intention to abandon Nebraska as their domicile. The court pointed to the Acklies' maintaining two residences in Nebraska, registering vehicles and watercraft in Nebraska, being listed as salaried Nebraska employees located in the Crete Carrier Corporation office in filings with the Department, maintaining vast real estate investment holdings in Nebraska for which they received taxable income, having property tax statements for those properties mailed to addresses in Lincoln, and spending considerably more time in Nebraska than in Florida.

Alternatively, the court found that the Acklies were residents of Nebraska for the audit period, because they maintained a permanent place of abode in Nebraska and spent an aggregate of more than 6 months in Nebraska in each of those years. The court recognized the Acklies' disagreement with the Department's interpretation of 6 months as being equivalent to 183 days. It stated that the Acklies cited no legal authority to support their "'fractional month' approach to determining residency," while the Department cited to 18 states that "'use spending more than 183 days in the state as a basis for determining statutory residency.'" The court stated it would give the Department's interpretation deference because the interpretation comported with the plain and ordinary meaning of the regulatory language and was not inconsistent or plainly erroneous. As to the Acklies' disagreement with the Department's position that any part of a day in Nebraska was considered a full day in Nebraska, the court stated that the issue was resolved by Neb. Rev. Stat. § 77-2714 (Reissue

2018) and I.R.C. § 7701(b)(7)(A) (2018). Using that interpretation, Duane and Phyllis each spent over 183 days in Nebraska in the 2010 to 2013 tax years; they did not do so in 2014.

The court found that the Acklies were each a resident of Nebraska for each year of the audit period, because each was domiciled in Nebraska during those years. Alternatively, it found that the Acklies were each residents of Nebraska for the taxable years 2010, 2011, 2012, and 2013 because they maintained a permanent place of abode and were present in Nebraska for an aggregate of more than 6 months during each of those years. Thus, the court found that the Acklies were liable for all unpaid taxes due and owing, together with interest, in the amounts previously stipulated to by the parties. With respect to the imposition of penalties, the court stated that the Acklies did not present the issue to the Tax Commissioner, but that they did present the issue to the court in their petition for review. Under Neb. Rev. Stat. § 84-917(5)(b)(i) (Cum. Supp. 2022), the court remanded the matter to the Department for resolution of whether penalties should be assessed on the taxes owed by the Acklies.

The Acklies appealed, and we moved the case to our docket.[2]

## ASSIGNMENTS OF ERROR

The Acklies assign that the district court erred (1) in determining that they were domiciled in Nebraska during the audit period, (2) in determining that they both maintained a permanent place of abode in Nebraska and spent in the aggregate more than 6 months in Nebraska in 2010 through 2013, (3) in determining that they were both resident individuals of Nebraska during the audit period, and (4) in affirming the deficiencies in income tax asserted by the Department for the audit period.

_____

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

STANDARD OF REVIEW

[1,2] In an appeal under the Administrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record.[3] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]

[3-5] A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.[5] A capricious decision is one guided by fancy rather than by judgment or settled purpose.[6] The term "unreasonable" can be applied to a decision only if the evidence presented leaves no room for differences of opinion among reasonable minds.[7]

ANALYSIS

For Nebraska income tax purposes, a "[r]esident individual" is "an individual who is domiciled in Nebraska or who maintains a permanent place of abode in this state and spends in the aggregate more than six months of the taxable year in this state."[8] Both parties focus on this definition.

As the district court emphasized, a person can fall within the definition of resident individual in two ways. One way is to be domiciled in Nebraska. The other is to maintain a permanent place of abode in Nebraska and spend in the

---

[3] *Houghton v. Nebraska Dept. of Rev.*, 308 Neb. 188, 953 N.W.2d 237 (2021).

[4] *Id.*

[5] *Gelco Fleet Trust v. Nebraska Dept. of Rev.*, 312 Neb. 49, 978 N.W.2d 12 (2022).

[6] *Id.*

[7] *Id.*

[8] § 77-2714.01(7).

aggregate more than 6 months of the year in Nebraska. We start with domicile.

## Domicile

The Acklies argue that they changed their domicile to Florida in 2008 and that thus, they were domiciled there during each year of the audit period. They contend that the court erred by essentially determining that abandonment of their Nebraska domicile required severance of all significant ties to Nebraska. We disagree.

[6-9] The requirements to establish and change a domicile are settled. To acquire a domicile by choice, there must be both (1) residence through bodily presence in the new locality and (2) an intention to remain there.[9] All of the surrounding circumstances and the conduct of the person must be taken into consideration to determine his or her domicile.[10] To change domicile, there must be an intention to abandon the old domicile.[11] To establish a new domicile, the present intention must be to remain indefinitely at a location or site or to make a location or site the person's permanent or fixed home.[12]

In terms of individual income tax, a regulation provides additional guidance on domicile. The regulation states:

> The question of domicile is a question of fact rather than law, frequently depending upon a variety of circumstances. The term domicile shall mean the place where an individual has his or her true, fixed, and permanent home and principal establishment, and to which whenever he or she is absent he or she has the intention of returning. Actual residence is not necessarily domicile.[13]

---

[9] *Houghton v. Nebraska Dept. of Rev., supra* note 3.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] 316 Neb. Admin. Code, ch. 22, § 001.03 (2009).

The burden of proof to show a change of domicile rested with the Acklies.[14] Both the Tax Commissioner and the district court determined that the Acklies failed to meet their burden of proof.

[10] Our standard of review is key. We are not entitled to weigh evidence or decide issues anew. Rather, our review focuses on whether the district court's decision is supported by competent evidence, whether it conforms to the law, and whether it is neither arbitrary, capricious, nor unreasonable.[15] In conducting a review for errors appearing on the record, we will not substitute our factual findings for those of the district court where competent evidence supports those findings.[16]

[11] Whether the Acklies changed their domicile revolves around their intent. Intent is a question of fact, which may be determined by circumstantial evidence.[17] The parties agreed that Phyllis would testify that the Acklies intended to change their domicile from Nebraska to Florida. However, we bear in mind that "'any self-serving declaration . . . may frequently lack persuasiveness or even be contradicted or negated by other declarations and inconsistent acts.'"[18]

The district court based its decision on the Acklies' conduct during the audit period that was inconsistent with an intention to abandon Nebraska as their domicile. The court found that this evidence outweighed evidence supporting a Florida domicile.

The Acklies assert that they are not asking us to reweigh factual findings of the court. But by asserting that "there are some facts that carry particular weight,"[19] they are essentially challenging the district court's weighing of the evidence.

---

[14] See Neb. Rev. Stat. § 77-2781 (Reissue 2018).

[15] See *Houghton v. Nebraska Dept. of Rev., supra* note 3.

[16] See *id.*

[17] *Id.*

[18] *Id.* at 197, 953 N.W.2d at 244.

[19] Brief for appellant at 16.

As the Acklies recognize, we stated in *State v. Jensen*[20] that "[o]ne fact of particular significance in ascertaining a person's domicile is the act of registering and voting." We quoted an earlier decision explaining as follows: "'In doubtful cases particular significance should be attached to the repeated exercise of the right to vote, because this right depends upon citizenship and domicile, and must be generally, if not universally, supported by the oath of the voter. . . .'"[21]

Thus, the Acklies highlight that when they registered to vote in Florida in 2008 and when they exercised that right, they swore that they were permanent residents of Florida.[22] They also direct our attention to other actions supported by an oath or sworn statement: Phyllis swore that she was a permanent resident of Florida when the Acklies applied for a homestead exemption in 2008, and Phyllis filed a petition for determination of inheritance tax in Nebraska in 2017 which reported Duane's domicile as being in Florida.

[12] But the *Jensen* decision also reiterated that domicile "depends upon no one fact or combination of circumstances, but from the whole taken together, it must be determined in each particular case."[23] Thus, the items the Acklies highlight do not control.

[13] Further insight is garnered from a legal encyclopedia. It cautions that "[a] fact of controlling importance in one case may have only slight significance in relation to all the facts of another . . . ."[24] It adds that "[w]here facts are conflicting or where there is any reasonable doubt, the presumption is in

---

[20] *State v. Jensen*, 269 Neb. 213, 218, 691 N.W.2d 139, 144 (2005).

[21] *Id.* at 218-19, 691 N.W.2d at 144, quoting *In re Estate of Meyers*, 137 Neb. 60, 288 N.W. 35 (1939).

[22] See, Fla. Const. art. VI, §§ 2 and 3; Fla. Stat. Ann. §§ 97.041(1)(a) and 97.051 (West 2017).

[23] *State v. Jensen, supra* note 20, 269 Neb. at 218, 691 N.W.2d at 144.

[24] 28 C.J.S. *Domicile* § 52 at 104 (2019).

favor of an original, or former, domicile, as against an acquired one . . . ."[25]

With regard to the relative amount of time spent in each jurisdiction, the district court quoted from our decision involving a quo warranto action.[26] In that case, the defendant was elected a county commissioner for Cherry County, Nebraska. At that time and for 2 years after, she lived in Cherry County with her husband on a rented ranch. The defendant and her husband owned a residence in Grant County, Nebraska, and in previous years, the defendant lived in that county with her children. After the defendant and her husband lost their lease on the Cherry County residence, the defendant changed her residence to an apartment in Cherry County, while her husband moved to their Grant County residence. The defendant changed her registration for voting to the Cherry County apartment. In determining the defendant's domicile, this court discussed several surrounding circumstances. We stated that her bodily presence was nearly equal between the two counties and that her act of changing her voting registration "is an act indicating her intention to be domiciled in Cherry County, but is not conclusive."[27] We noted that she told others her residence was in Grant County, that she did not register her vehicles in the precinct of her Cherry County apartment, and that she submitted claims for mileage from her Grant County residence to Cherry County. We reasoned that "[h]er returning to her husband's Grant County residence during the times that her business activities did not require her presence in Cherry County are also indicative of her intention not to abandon her husband's domicile."[28]

---

[25] *Id.*, § 46 at 98.

[26] *State v. Jones*, 202 Neb. 488, 275 N.W.2d 851 (1979).

[27] *Id.* at 492, 275 N.W.2d at 854.

[28] *Id.* at 492-93, 275 N.W.2d at 854.

Here, too, the amount of time the Acklies spent in each state is a factor for consideration. The court found that each of the Acklies "spent considerably more time in Nebraska than in Florida for each year of the [a]udit [p]eriod, when counting partial days in Nebraska." Even comparing full days spent in each state, the days in Nebraska exceeded the days in Florida each year. But more importantly, the location summaries for each year tend to show that Lincoln was a "home base" for both Duane and Phyllis—it was the place from where they departed and to where they returned most frequently in connection with their travels. This remained true for each tax year of the audit period except 2014.

The district court's factual findings are supported by competent evidence. As the court observed, some facts supported finding a Nebraska domicile, while others supported a Florida domicile. Being mindful that the evidence and inferences as to domicile were conflicting, that there is a presumption against a change of domicile in such a situation, that the burden of proof rested on the Acklies, and that we do not reweigh facts, we do not find any errors appearing on the record.

### Aggregate of More Than 6 Months

[14] The Acklies also challenge the district court's determination that they spent in the aggregate more than 6 months of the year in Nebraska for tax years 2010, 2011, 2012, and 2013. This argument pertains to the other way that a person can fall within the definition of a resident individual. But because we have already found that the Acklies fit within that definition based on domicile, we need not determine whether they also met the alternative test. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[29]

---

[29] *Choice Homes v. Donner*, 311 Neb. 835, 976 N.W.2d 187 (2022).

## CONCLUSION

The district court's decision that both Duane and Phyllis failed to prove they changed their domicile from Nebraska to Florida for any of the tax years within the audit period conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Having found no errors appearing on the record, we affirm the judgment of the district court.

AFFIRMED.

HEAVICAN, C.J., not participating.